S01G1157. GOLDEN PEANUT COMPANY v. BASS et al.
(563 SE2d 116)

CARLEY, Justice.

Golden Peanut Company (Golden Peanut) is a "sheller" engaged in the business of purchasing peanuts. Neon Earl Bass, Jr., Dry Branch Farms, Inc. and Varner-Bass Enterprises (Plaintiffs) are farmers who agreed to sell peanuts to Golden Peanut. When a dispute arose over payment, Plaintiffs brought suit. Golden Peanut answered and raised, among its other defenses, the illegality of the sales contracts. At trial, both Golden Peanut and Plaintiffs introduced parol evidence in support of their contentions. The jury

returned a verdict in favor of Plaintiffs. The Court of Appeals reversed based upon the trial court's failure to give a requested charge on accord and satisfaction. However, the court rejected Golden Peanut's claims that the contracts were illegal and its contention that Plaintiffs' parol evidence was inadmissible. *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 237-240 (4), (5) (547 SE2d 637) (2001). We granted Golden Peanut's petition for certiorari to review those two holdings of the Court of Appeals.

1. Golden Peanut contends that the contracts failed to comply with applicable federal statutory and regulatory authority because a final price for Plaintiffs' peanuts was not specified. Instead, the agreement was to pay a "floor price" for the peanuts, with an "understanding that a final price could be 'lock(ed) in' later in the year. . . . The prescribed method for 'locking in' the actual price would be slightly different for quota peanuts and for additional peanuts." *Golden Peanut Co. v. Bass*, supra at 225. As the Court of Appeals noted, the federal statutes and regulations in force at the time specified that an agreement should contain certain provisions, including "the final contract price" and an express prohibition against changing that price. *Golden Peanut Co. v. Bass*, supra at 237 (4). Because Golden Peanut's contracts with Plaintiffs did not include those provisions, they did not comply with that federal authority. However, the decisive question is whether that failure renders the agreements illegal so that Golden Peanut's promise to pay Plaintiffs according to the formula established by parol evidence is unenforceable. "[I]llegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U. S. 72, 77 (II) (102 SC 851, 70 LE2d 833) (1982).

In federal law, illegality as a purchaser's contractual defense to a seller's claim for payment is not favored, " 'and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions.' " *Kelly v. Kosuga*, 358 U. S. 516, 519 (79 SC 429, 3 LE2d 475) (1959) (violation of the Sherman Antitrust Act). Application of that defense

> is not automatic but requires . . . a comparison of the pros and cons of enforcement. [Cits.] . . . The benefits of enforcing the tainted contract — benefits that lie in creating stability in contract relations and preserving reasonable expectations — must be compared with the costs in forgoing the additional deterrence of behavior forbidden by statute that is brought about by refusing to let the violator enforce the contract.

*Northern Indiana Pub. Svc. Co. v. Carbon County Coal Co.*, 799 F2d

265, 273 (2) (7th Cir. 1986) (violation of the Mineral Lands Leasing Act). An agreement for the purchase of peanuts is not inherently illegal. Compare *Kaiser Steel Corp. v. Mullins*, supra (collective-bargaining agreement violative of anti-trust laws).

> [W]hen the contract sued upon is not intrinsically illegal, the [Supreme] Court [of the United States] has refused to allow property to be obtained under a contract of sale without enforcing the duty to pay for it because of violations of [federal law] not inhering in the particular contract. . . .

*Bruce's Juices v. Amer. Can Co.*, 330 U. S. 743, 755 (67 SC 1015, 91 LE 1219) (1947) (violation of the Robinson-Patman Act). The statutes and regulations upon which Golden Peanut relies relate only to the express terms that a contract to sell peanuts must contain in order to satisfy federal requirements, and do not bar a recovery against the purchaser who enters into an agreement to buy peanuts which does not comply fully with those requirements. See *Bruce's Juices v. Amer. Can Co.*, supra at 750-751. Moreover, the allegedly deficient agreements were memorialized on a form prepared by Golden Peanut. "The words 'floor price' were typed next to the term 'firm price' on each of the form contracts. [Cit.]" *Golden Peanut Co. v. Bass*, supra at 225. To hold that those contracts are illegal and unenforceable against Golden Peanut would appear to violate the "general policy . . . 'of preventing people from getting other people's property for nothing when they purport to be buying it.' [Cit.]" *Kelly v. Kosuga*, supra at 520-521.

> "If the contract be executed, . . . , that is, if the wrong be already done, the illegality of the consideration does not confer on the party guilty of the wrong the right to renounce the contract; for the general rule is, that no man can take advantage of his own wrong, and the innocent party, therefore, is alone entitled to such a privilege." [Cits.]

*Daniels v. Tearney*, 102 U. S. 415, 421 (26 LE 187) (1880).
"Applied too strictly, the doctrine that makes the unenforceability of a contract an additional remedy for the violation of a statute can produce a disproportionately severe sanction. . . ." *Northern Indiana Pub. Svc. Co. v. Carbon County Coal Co.*, supra at 273 (2). Applying the federal balancing test to the circumstances in this case, we conclude that the Court of Appeals correctly held that any deficiency in the form of the agreements is not such as to render them illegal and unenforceable against Golden Peanut. See *Kelly v. Kosuga*, supra; *Bruce's Juices v. Amer. Can Co.*, supra.

2. Golden Peanut further contends that the contracts are illegal

and unenforceable under Georgia law. However, only federal statutory and regulatory authority mandates that a contract for the sale of peanuts specify the final price. In this state, only certain agreements are required to be in writing. OCGA § 13-5-30. Thus, as a general rule, "[a]n oral contract is legal and may be enforced by an action at law. [Cits.]" *Venable v. Block*, 138 Ga. App. 215, 217 (2) (225 SE2d 755) (1976). " 'When a contract is not wholly in writing, but is partly in writing and partly in parol, the entire contract is considered as one in parol.' [Cit.]" *Jankowski v. Taylor, Bishop & Lee*, 154 Ga. App. 752, 754-755 (2) (269 SE2d 871) (1980). Therefore, a party to a contract which is not fully in writing may have a viable statute of frauds defense, but cannot defend on the ground that the agreement is an illegal contract simply because it is partially in parol. The contracts for the sale of peanuts at issue in this case are neither illegal under the law of Georgia nor in contravention of its public policy. OCGA §§ 13-8-1, 13-8-2.

3. Golden Peanut correctly notes that, in addressing the parol evidence issue, the Court of Appeals erroneously cited the general contract provisions of OCGA § 13-2-2 (1), rather than the specific sales provisions of OCGA § 11-2-202. See *Golden Peanut Co. v. Hunt*, 203 Ga. App. 469, 470 (2) (416 SE2d 896) (1992). In the trial court, however, Golden Peanut did not object to Plaintiffs' parol evidence under either statute. Therefore, admission of that evidence would not be reversible error regardless of which provision the Court of Appeals relied upon. *Franklin v. Towe*, 233 Ga. 950 (3) (213 SE2d 892) (1975). Moreover, OCGA § 11-2-202

> was meant to liberalize the common law parol evidence rule to allow evidence of agreements outside the contract, without a prerequisite finding that the contract was ambiguous. In addition, the section requires contracts to be interpreted in light of the commercial context in which they were written and not by the rules of legal construction. [Cits.]

*Southern Concrete Svcs. v. Mableton Contractors*, 407 FSupp. 581, 582-583 (N.D. Ga. 1975), aff'd 569 F2d 1154 (5th Cir. 1978). Thus, any parol evidence admissible under the stricter standards of OCGA § 13-2-2 (1) presumably would be admissible under the more liberal provisions of OCGA § 11-2-202.

Under the less restrictive terms of OCGA § 11-2-202, a written sales contract

> may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but *may be explained or supplemented*: (a) By course of dealing or usage of

trade ([cit.]) or by course of performance ([cit.]); and (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. (Emphasis supplied.)

The contracts expressly provide for a "floor price." Parol evidence was clearly admissible under OCGA § 11-2-202 (a) to explain the meaning of that term. See *Warren's Kiddie Shoppe v. Casual Slacks*, 120 Ga. App. 578, 579 (1) (171 SE2d 643) (1969). "Witnesses for both sides testified that a floor price is simply a minimum price." *Golden Peanut Co. v. Bass*, supra at 225. The agreements thus show, on their face, that the final price for the peanuts was not expressed therein. Thus, the written contracts were not intended by the parties as a complete and exclusive statement of the agreed upon terms, because only a floor price, rather than the final sales price, was stated. Consequently, parol evidence as to the parties' prescribed method for fixing the final price would be admissible under OCGA § 11-2-202 (b) as a consistent and necessary additional term. See *Atlanta Army & Navy Store v. Stuckman*, 143 Ga. App. 850 (1) (240 SE2d 220) (1977). Compare *Golden Peanut Co. v. Hunt*, supra at 470 (2) (parol evidence inadmissible to contradict agreement and to supply additional uncontemplated terms).

Golden Peanut nevertheless urges that Plaintiffs' parol evidence was inadmissible because the agreements also contain a merger clause. According to that provision, the written contract was the complete agreement between the parties, and parol evidence should not be necessary to supplement or explain it. The pre-printed merger clause would be consistent with a contract which contained a firm sales price. Here, however, the term "floor price" had been typed next to "firm price" on the form agreements. The merger clause is inconsistent with this contractual specification of only a minimum, rather than the final, price. To give effect to that provision would negate the existence of an enforceable contract by precluding introduction of parol evidence regarding the essential final price term. "Normally, a contract with inconsistent provisions should be interpreted so that the construction which upholds the contract is preferred. [Cits.]" *Diggs v. Swift Loan & Finance Co.*, 154 Ga. App. 389, 390 (268 SE2d 433) (1980). Moreover, "[t]he intention of the parties controls and 'should be given effect regardless of mere literal repugnancies in different clauses of the (agreement).' [Cit.]" *Benedict v. Snead*, 271 Ga. 585, 586 (519 SE2d 905) (1999). The parties' intention to enter into contracts in which the final price would not be locked in until a later time was clear. As previously noted, parol evidence of the method for determining the final price would be admissible under OCGA § 11-2-

202 (b), because the four corners of the document were not intended to set forth a complete and exclusive statement of the terms. "The type of evidence which may be admitted under subsection (b) deals with agreements covering matters not dealt with in the written contract. [Cits.]" *Southern Concrete Svcs. v. Mableton Contractors*, supra at 585 (II).

> Viewing the contract as a whole, where there are conflicting provisions, "(t)he clause contributing most essentially to the contract is entitled to the greater consideration. . . ." [Cit.] "A subsidiary provision should be so interpreted as not to be in conflict with what clearly appears to be the 'dominant purpose' of the contract." [Cit.]

*Joseph Camacho Assoc. v. Millard*, 169 Ga. App. 937, 938 (1) (a) (315 SE2d 478) (1984). The parties' expressed intent to contract for the sale of peanuts at a final price to be determined later according to an easily applied formula necessarily contemplates an additional understanding as to the establishment of that missing term, and that contractual intent will control over any inconsistent pre-printed merger clause. Although the Court of Appeals mistakenly relied upon OCGA § 13-2-2 (1) in its analysis, the holding that Plaintiffs' parol evidence was admissible is affirmed under the right for any reason principle.

*Judgment affirmed. Fletcher, C. J., Sears, P. J., Benham, Hunstein and Thompson, JJ., and Judge Constance C. Russell concur. Hines, J., not participating.*

DECIDED APRIL 29, 2002.

*Alston & Bird, Jay D. Bennett, Candace N. Smith, Paul J. Kaplan, Bondurant, Mixson & Elmore, Emmet J. Bondurant, Michael B. Terry, Frank M. Lowrey IV*, for appellant.

*King & Spalding, Griffin B. Bell, Benjamin F. Easterlin IV, Michael C. Russ, John P. Brumbaugh*, for appellees.

*Watson, Spence, Lowe & Chambless, Evans J. Plowden, Jr., Dawn G. Benson, Charles K. Wainright II*, amici curiae.