## A10A2272. DUKE GALISH, LLC et al. v. MANTON.

(707 SE2d 555)

MIKELL, Judge.

This is the second appearance of this case before this Court. In *Duke Galish, LLC v. Manton* ("*Manton I*"),[1] we affirmed the grant of summary judgment to appellee John P. "Jack" Manton and others on the claims for tortious interference with contract and fraud brought by Duke Galish, LLC and Lanier Lodge, Inc. ("Lanier").[2] Lanier also brought a breach of contract claim against Manton, which remained pending in the trial court.[3] Following *Manton I*, the trial court granted summary judgment to Manton on the breach of contract claim. Lanier appeals. We reverse, but we hold that Lanier is limited to recovering nominal damages.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[4] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant."[5]

Certain relevant facts are set out in *Manton I*. Lanier, which was co-owned by the Anglin family and Manton, operated a motel in Forsyth County. In 1996, Lanier refinanced the motel property by obtaining a $2,000,000 loan from Bank of North Georgia ("BNG"). In 2001, Manton sold his interest in Lanier to Anglin for $75,000 in cash and a $415,000 promissory note, which was secured by a second priority security interest in the motel property. Lanier ceased operating the motel in January 2003 and defaulted on its financial obligations. Manton sued Lanier and the Anglins for breach of the promissory note in the Superior Court of Forsyth County (the "Forsyth Litigation"). BNG then accelerated Lanier's debt, and Lanier filed a Chapter 11 bankruptcy petition to avoid foreclosure.[6]

On November 20, 2003, Manton filed a proof of claim in the bankruptcy court showing that he was owed $479,620.16 on the promissory note and that his claim was the subject of the pending Forsyth Litigation. Thereafter, as we noted in *Manton I*, "[o]n March

---

[1] 291 Ga. App. 827 (662 SE2d 880) (2008).

[2] Id.

[3] Id. at 831, n. 1.

[4] (Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[5] (Citation, punctuation and footnote omitted.) *Radha Krishna, Inc. v. Desai*, 301 Ga. App. 638 (689 SE2d 78) (2009).

[6] *Manton I*, supra at 828.

9, 2004, the superior court in the Forsyth Litigation entered a consent judgment under which Manton agreed to a full settlement of his claims on the promissory note if the Anglins paid him $400,000 within 120 days (the 'Consent Judgment')."[7]

After the Consent Judgment was entered, Lanier filed a motion in the bankruptcy court seeking permission to sell the motel property to Duke Galish, a company also owned by the Anglins, for $1,700,000. The purchase agreement that was attached to the motion "contained several conditions, including that the purchase was 'specifically subject to Duke Galish being able to obtain a building permit for modifying the existing premises into office premises.' "[8] While the motion was pending, Lanier asked BNG and Manton to provide written confirmation of the payoff amounts on their secured claims. "Manton replied that he was standing firm on his original proof of claim for the full amount owed under the promissory note, minus the $50,000 already paid to him by the Anglins under the Consent Judgment."[9] BNG submitted a payoff amount of $1,121,151.15, but later filed a proof of claim which raised that amount by $145,000.[10] Lanier did not file an objection to BNG's or Manton's proof of claim.

The trustee opposed the sale for numerous reasons, including Lanier's failure to satisfy the contingency in the agreement requiring it to obtain a building permit to redevelop the motel property. In addition, the trustee determined that the price was not enough to pay off the secured creditors' claims and produce any return for the bankruptcy estate. Ultimately, Lanier's case was converted to Chapter 7, and the automatic stay was lifted. BNG foreclosed on the motel property.[11]

The next month, Manton facilitated a deal whereby Forsyth County bought the motel property from BNG and later redeveloped it into a juvenile courthouse and government office complex. The sale closed on August 27, 2004, and Manton was paid a consultation fee.[12]

Duke Galish and Lanier then filed the underlying action against Manton and BNG, alleging fraud, tortious interference with the purchase agreement, and breach of contract against Manton. In *Manton I*, we affirmed the grant of summary judgment to Manton and BNG on the fraud and tortious interference claims, holding that "appellants failed as a matter of law to show that the alleged

---

[7] Id. at 829.

[8] (Punctuation omitted.) Id. at 829.

[9] Id.

[10] Id. at 830.

[11] Id.

[12] Id. at 830-831.

misconduct proximately resulted in their failure to consummate the contract of sale."[13]

Presently before us is the grant of summary judgment to Manton on Lanier's breach of contract claim. In that count, Lanier alleges that the Consent Judgment constituted a contract for settlement of all claims pending between all the parties to the Forsyth Litigation; that Manton's act of maintaining a proof of claim in the bankruptcy court for an amount that exceeded the settlement constituted a breach of contract; and that as a "direct and proximate result" of Manton "falsely" maintaining the proof of claim, Lanier was damaged by no less than $1,600,000. The trial court concluded that Lanier was not a party to the Consent Judgment and therefore could not maintain an action against Manton for breach of its terms.

1. Lanier argues that the trial court erred in determining that it was not a party to the Consent Judgment. We agree.

The Consent Judgment states that it "shall supersede all pleadings previously filed in this civil action"; that Manton "is granted judgment on his Complaint for Breach of Contract against [the Anglin defendants] in the amount of $475,609.04"; that "[t]here is no entry of judgment at this time against Defendant Lanier Lodge, Inc., since this defendant is in the midst of a bankruptcy proceeding"; and that "[i]n lieu of collecting upon the full judgment amount . . . , Manton shall accept payment from defendants pursuant to" certain terms and conditions. The terms required the Anglins to pay Manton $50,000 prior to entry of the judgment and $350,000 within 120 days, as well as to dismiss with prejudice all counterclaims and a pending appeal. All defendants, including Lanier, dismissed their counterclaims with prejudice.

"A consent judgment is a contract and, therefore, must be interpreted like any other contract. As in all contracts, the cardinal rule of construction of a consent agreement is to determine the intent of the parties."[14]

> Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract. Parol evidence is only admissible when any ambiguity cannot be resolved through the appli-

---

[13] Id. at 827.

[14] (Punctuation and footnote omitted.) *Dept. of Transp. v. Gilbert's Auto Svc.*, 301 Ga. App. 419, 422 (687 SE2d 659) (2009), citing *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 424 (3) (627 SE2d 549) (2006).

cation of the rules of contract construction and when such unresolved ambiguity must be resolved by a jury as a matter of disputed fact. The existence or nonexistence of ambiguity in a contract is a question of law for the court.[15]

"Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression."[16] The Consent Judgment is ambiguous; it states in Paragraph 3 that there is no entry of judgment "at this time" against Lanier, and it refers only to the Anglins collectively as "defendants." We apply the rules of contract construction to resolve these ambiguities. Although "[p]arol evidence is inadmissible to add to, take from, or vary a written contract[, a]ll the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained."[17] In addition, "[a]ll contemporaneous writings shall be admissible to explain each other."[18] And, a court should construe a contract to "give a reasonable, lawful and effective meaning to all manifestations of intention by the parties."[19] No contractual provision should be rendered meaningless, nor any of its terms mere surplusage.[20]

Applying these guidelines, we conclude that Lanier is a party to the Consent Judgment. We construe the phrase that judgment is not entered against Lanier "at this time" because it is in bankruptcy to imply that the entry of judgment is contemplated at a later time; otherwise the term would be rendered meaningless. The surrounding circumstances show that Lanier filed a dismissal of its counterclaim with prejudice contemporaneously with the filing of the Consent Judgment, thereby manifesting an understanding that it was included in, and obligated by, the Consent Judgment. Although Manton argues that Lanier's unilateral intention is irrelevant, we disagree. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be

---

[15] (Citations, punctuation and footnotes omitted.) *Safe Shield Workwear v. Shubee, Inc.*, 296 Ga. App. 498, 501-502 (3) (675 SE2d 249) (2009).

[16] (Citation omiited.) *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002).

[17] OCGA § 13-2-2 (1); accord *Thomas v. B & I Lending*, 261 Ga. App. 39, 42 (1) (581 SE2d 631) (2003).

[18] OCGA § 24-6-3 (a); *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 459 (1) (314 SE2d 874) (1984); *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452 (471 SE2d 537) (1996).

[19] (Citations and punctuation omitted.) *Rice v. Huff*, 221 Ga. App. 592, 593 (1) (472 SE2d 140) (1996).

[20] *Pomerance v. Berkshire Life Ins. Co. &c.*, 288 Ga. App. 491, 494 (1) (654 SE2d 638) (2007) (physical precedent only). Accord *Northwest Plaza v. Northeast Enterprises*, 305 Ga. App. 182, 189 (1) (699 SE2d 410) (2010).

held as the true meaning."[21] Lanier's intention, demonstrated by its performance of a contractual term, is controlling. For this reason, the trial court erred in concluding that Lanier was not a party because only the Anglins were included in the collective term "defendants." Lanier is listed as a defendant in the style of the case on the face of the Consent Judgment. The preamble expressly refers to "the parties having reached an agreement for the entry of a judgment as reflected by their consent below." It is true that, "[u]nder general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive."[22] But even if the word "parties" is more broadly inclusive than the word "defendants," as defined by the Consent Judgment, the attendant circumstances and contemporaneous dismissal compel the conclusion that Lanier is a party to the Consent Judgment. Accordingly, Lanier was a party thereto, and the trial court erred in ruling otherwise.[23]

2. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."[24] Having determined that Lanier was a party to the Consent Judgment, we must determine whether there is any evidence that Manton breached it. There is evidence, reflected in *Manton I*[25] and in affidavits of counsel, that after the Consent Judgment was entered, Manton maintained the position in the bankruptcy court that he was owed the total amount of his original claim, less $50,000 already paid. However, the trial court's order entered on April 30, 2007, recites that there was no evidence at that time that Manton was paid more than $50,000. The Consent Judgment required the remaining $350,000 payment to be made within 120 days of March 9, 2004, and

---

[21] OCGA § 13-2-4; *Harris v. Distinctive Builders*, 249 Ga. App. 686, 688 (1) (549 SE2d 496) (2001).

[22] (Punctuation and footnote omitted.) *Lay Bros., Inc. v. Golden Pantry Food Stores*, 273 Ga. App. 870, 872-873 (1) (616 SE2d 160) (2005).

[23] Our ruling comports with prior rulings by the trial court. In an order entered on August 11, 2005, denying Manton's motion for summary judgment, the court found that the Consent Judgment was "clear and unambiguous" and that "no claims remained as to Defendant [Lanier] upon which Plaintiff could move for summary judgment." In an order entered in 2007, which was affirmed in *Manton I*, the trial court found that "[u]nder the terms of the Consent Judgment, [Manton] agreed to receive $400,000 within 120 days as full settlement of the claims – if Anglin performed fully under the terms of the Consent Judgment then such performance would operate . . . as an accord and satisfaction." The court also ruled that, at the time, there was no evidence that Manton was paid more than $50,000, so he was still a judgment creditor of Lanier in the amount of $350,000 and was entitled to file a proof of claim in the bankruptcy court.

[24] (Citation omitted.) *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (1) (669 SE2d 179) (2008).

[25] Supra at 829.

stated that, "[i]n the event defendants fail to fully carry out the terms and conditions . . . , Plaintiff Manton shall be entitled to enforce and collect upon this Consent Judgment for the full Judgment Amount as set forth [herein]." Although Lanier asserts in its brief that the full amount of the Consent Judgment has been paid, Lanier has not supported this assertion by citation to the record, and we will not consider it.[26]

Manton has not addressed this issue in its brief. If, in fact, final payment was not timely made, then Manton did not breach the Consent Judgment by maintaining a proof of claim in the bankruptcy court for the full amount owed thereunder. Nevertheless, on summary judgment, we must construe the evidence most favorably to Lanier as the nonmovant,[27] and we are not empowered to engage in factfinding.[28] As such, it appears that questions of fact remain on this issue, and summary judgment was improperly granted to Manton.[29]

3. Nevertheless, even if Lanier is able to prove a breach by Manton, Lanier cannot show actual damages and is limited to recovering nominal damages.

Lanier asserts in its complaint that as a "direct and proximate result of the breaches of Defendant Manton in falsely maintaining the proof of claim after settling the claims in the Forsyth County Litigation, Lanier has been damaged in an amount to be determined by the trier of fact but in no event less than $1.6 million dollars." This claim is foreclosed by *Manton I*, where we held as follows:

[A]ppellants cannot establish that the appellees' allegedly fraudulent secured creditor claims proximately resulted in the failure to consummate the Purchase Agreement. As noted, the Purchase Agreement provided that the purchase of the Motel Property was "specifically subject to [Duke Galish] being able to obtain a building permit for modifying the existing premises into office premises from all appropriate governmental authorities." But, the appellants have failed to come forward with any evidence to show that this contingency was or could have been met. Indeed, at the Chapter 7 creditors' meeting, the Anglins noted that building

---

[26] See *Dodson v. Dean*, 256 Ga. App. 4, 5, n. 1 (567 SE2d 348) (2002).

[27] See *Radha Krishna*, supra at 641 (2).

[28] See, e.g., *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57, 59 (1) (484 SE2d 653) (1997) (appellate court does not find the facts).

[29] See, e.g., *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 230 (1) (547 SE2d 637) (2001), aff'd, 275 Ga. 145 (563 SE2d 116) (2002) (what constituted jury questions with regard to accord and satisfaction).

permits for the redevelopment of the Motel Property into office condominiums had not been obtained. And, the trustee was unwilling to accept any offers to purchase the Motel Property that had any remaining contingencies. Given this uncontroverted record, it is clear that even if the appellees had not purportedly inflated their secured claims, the sale of the Motel Property to Duke Galish would not have occurred due to the unfulfilled building permit contingency.[30]

*Manton I*, which is binding precedent, establishes that regardless of Manton's proof of claim, the sale to Duke Galish would not have occurred, precluding Lanier's recovery of actual damages on its breach of contract claim.[31] However, in the event that a jury decides that Manton breached the Consent Judgment, Lanier may recover nominal damages. "In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."[32] Although Lanier's complaint sought only actual damages, "it is not necessary to pray specifically for general or nominal damages in order to present a question for the jury as to nominal damages."[33]

*Judgment reversed. Adams, J., concurs. Smith, P. J., concurs and concurs in the judgment only in Divisions 2 and 3.*

DECIDED MARCH 9, 2011.

*Perrell & Wright, Charlotte K. Perrell*, for appellants.
*Cook, Noell, Tolley & Bates, Edward D. Tolley, Ronald E. Houser*, for appellee.

---

[30] (Citations and footnote omitted.) *Manton I*, supra at 832-833 (1).

[31] Pursuant to OCGA § 9-11-60 (h), "any ruling by . . . the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in . . . the Court of Appeals." See *IH Riverdale v. McChesney Capital Partners*, 292 Ga. App. 841, 843 (666 SE2d 8) (2008).

[32] OCGA § 13-6-6. See *Brock v. King*, 279 Ga. App. 335, 341 (3) (629 SE2d 829) (2006), aff'd, 282 Ga. 56 (646 SE2d 206) (2007).

[33] (Citations and punctuation omitted.) *Brock*, supra at 342 (3), n. 22.