# FOURTH DIVISION
## DOYLE, P. J.,
## ANDREWS, P. J. and BOGGS, J.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2055. HENDERSON et al. v. SUGARLOAF RESIDENTIAL    DO-094
PROPERTY OWNERS ASSOCIATION, INC.

DOYLE, Presiding Judge.

Walter Terrell Henderson, Jr., and Selena Henderson, individually and as custodians for their children, filed suit against Sugarloaf Residential Property Owners Association, Inc. ("the Association"), seeking damages for breach of contract, injunctive relief, and litigation expenses, alleging that the Association breached their agreement by refusing to combine the two lots owned by the Hendersons. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of the Association. For the reasons that follow, we reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the

undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[1] "'On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.'"[2]

So viewed, the record shows that the Hendersons own two adjoining lots in Sugarloaf Country Club subdivision. They sought to combine the two lots, as permitted by the Declaration of Covenants, Conditions, and Restrictions for Sugarloaf Farms Residential ("Primary Declaration") and the Master Declaration of Residential Covenants, Conditions, and Restrictions for a Portion of Sugarloaf (Sugarloaf Country Club) ("Master Declaration").

Section 11 of Article IV of the Primary Declaration states:

*Combination or Subdivision of Lots.* Should the Residential Owner of a Lot own one or more adjacent Lot(s) and desire that two (2) or more of such Lots be considered as one Lot, then such Residential Owner may execute and record an instrument in the public real estate records in

---

[1] (Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[2] (Punctuation omitted.) *Duke Galish, LLC v. Manton*, 308 Ga. App. 316 (707 SE2d 555) (2011).

2

Gwinnett County, Georgia, declaring such Lots to be one Lot, and thereafter all such Lots shall be considered as one Lot for the purposes of this Declaration. No Lot shall be subdivided by sale, lease[,] or otherwise without the prior written consent of Declarant. Provided, however, Declarant reserves the right to change the size, boundaries[,] or dimensions of any Lot owned by Declarant for any reason.

Section 8.16 of Article VIII of the Master Declaration provides:

*. . . Combination or Subdivision o[f] Lots*. Should the Owner of a Lot own an adjacent Lot(s) and desire that two (2) or more such Lots be considered as one Lot, then such Lots shall be considered as one Lot for the purposes of this *Article VIII* upon the recordation with the Clerk of the Superior Court of Gwinnett County, Georgia, of an instrument by such Owner expressing such intent (such instrument to refer specifically to this section in this Declaration and to identify the Lots to be considered as one Lot for purposes of this *Article VIII*, and a copy of such recorded instrument shall be promptly delivered by such Owner to the Architectural Control Committee): and in each such case, Building Envelopes, setback lines, and easements reserved in this Master Declaration shall be adjusted accordingly by the Architectural Control Committee. No Lot shall be subdivided by sale, lease[,] or otherwise without the prior written consent of Declarant. Provided, however, Declarant reserves the right to change the size, boundaries[,] or dimensions of any Lot owned by Declarant for any reason. Notwithstanding anything to the contrary contained herein, if two (2) or more such Lots shall be considered as one Lot pursuant to this Section 8.16, the Master Association (or its designated third party agent, if

3

applicable), may charge Assessments to the Owner based upon the original number of Lots prior to their combination.

On December 27, 2010, the Hendersons recorded a consolidated plat of their lots and recorded an instrument of lot combination with the Gwinnett County Clerk of Superior Court; the document did not, however, refer specifically to the relevant portion of the Master Declaration as required therein. The Hendersons delivered copies of both documents to the Sugarloaf Residential Property Owners Association, Inc. (the "Association"), along with a request that the Architectural Control Committee adjust the building envelopes, setback lines, and easements pursuant to the Declarations. On December 30, 2010, Marvin Pastel, counsel for the Association, wrote to the Hendersons explaining that the document they recorded with the County "does not comport with the requirements of Article 8.16 of the Masters Declaration and is ineffective for the purposes of combining the two lots." Pastel advised therein that if the Hendersons wished to proceed with combining the two lots, they needed to execute and record an attached affidavit, which included, inter alia, (1) an acknowledgment that the lots would be combined, but would be considered as two distinct lots for all other purposes under the Declaration and would be assessed separately; and (2) an acknowledgment that if the Hendersons subsequently sought

4

to subdivide the lots in the future, all terms and provisions of Article VIII of the Master Declaration would apply to the lots individually, and the Hendersons would be required to remove any improvements that violated the building envelopes, setback lines, and easements for the lots. On January 19, 2011, the Hendersons filed an amended instrument of lot combination in superior court that specifically referred to Article 8 of the Master Declaration.

On June 17, 2011, the Hendersons sued the Association, seeking damages for breach of contract, injunctive relief, and litigation expenses, essentially alleging that the Association's requirement that they sign the proposed affidavit before the lots would be combined was a violation of the Declarations.[3] On November 4, 2011, the Association advised the Hendersons that it considered the Hendersons' two lots "as one lot" but that it would continue to charge them two assessments as permitted in the Master Declaration.

The parties filed cross-motions for summary judgment, and the trial court ruled in favor of the Association. In summary, the trial court concluded that the

---

[3] The Association filed a counterclaim for declaratory judgment, "to avoid any misunderstanding," on the issue of the Hendersons' continuing obligation to pay assessments for each lot. The trial court dismissed the counterclaim as unripe. That order is not at issue on appeal.

Association's requirement that the Hendersons execute an affidavit that comports with the relevant provisions of the Master Declaration was consistent with the Association's rights therein and did not constitute a breach of contract. The trial court also concluded that the Hendersons failed to articulate actual damages suffered as a result of the Association's alleged breach, other than their claim for attorney fees, and the Hendersons' claim for injunctive relief was moot. Finally, the trial court found that the Hendersons' claim for expenses of litigation under OCGA § 13-6-11 failed as a matter of law based on their failure to establish that the Association acted in bad faith.[4]

1. The Hendersons contend that the trial court erred by granting summary judgment to the Association on their breach of contract claim. We agree.

By recording a consolidated plat of their lots and an instrument of lot combination with the Superior Court of Gwinnett County, the Hendersons fully complied with the Primary and Master Declarations. As a result, pursuant to the mandatory language contained in the Declarations, the two lots were thereafter considered one lot. Pursuant to the Master Declaration, the Association had the right

---

[4] The trial court also granted summary judgment to the Association on the Hendersons' claim for attorney fees under the Declarations. The Hendersons do not challenge that ruling on appeal.

6

to charge separate assessments on each lot, even after consolidation. Nothing in the Declarations, however, permitted the Association to make consolidation of the lots conditional upon the Hendersons' execution of an affidavit acknowledging that the lots would be permanently assessed separately. Given the Association's continued insistence that the Hendersons execute such an affidavit before recognizing consolidation, the trial court erred by granting summary judgment to the Association on the Hendersons' breach of contract claim.[5]

2. The Hendersons contend that the trial court erred by granting summary judgment on their claim for injunctive relief on the ground that it was moot.

The Master Declaration provides that once lots have been combined and a copy of the recorded combination instrument has been delivered to the Architectural Control Committee (the "ACC") of the Association, "[b]uilding envelopes, setback

---

[5] The Association does not argue on appeal that the Hendersons failed to show damages resulting from the breach of contract. Pretermitting the sufficiency of the Hendersons' evidence of actual damages, they are entitled to recover nominal damages under the contract. See OCGA § 13-6-6 ("In every case of breach of contract the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."); *Fowler's Holdings, LLLP v. CLP Family Investments, L.P.*, 318 Ga. App. 73, 73-74 (1) (a) (732 SE2d 777) (2012); *Hooker v. Roberson*, 316 Ga. App. 345, 346 (2) (729 SE2d 484) (2012).

7

lines, and easements . . . shall be adjusted accordingly by the Architectural Control Committee."

Here, although it failed to do so initially, on November 4, 2011, after the lawsuit was filed, the Association acknowledged the consolidation of the Hendersons' lots. The Association admits on appeal, however, that it has not yet adjusted the setback lines on the Hendersons' plans, claiming that it is unable to do so until the Hendersons resubmit their plans. Pretermitting whether the Association's obligation to adjust the setbacks is contingent upon the Henderson's resubmission of their plans, the trial court erred by granting summary judgment to the Association on the Hendersons' claim for injunctive relief on the basis that it was moot.

3. In their final enumeration, the Hendersons argue that the trial court erred by granting summary judgment to the Association on the Hendersons' claim for attorney fees and expenses of litigation under OCGA § 13-6-11. We agree.

OCGA § 13-6-11 authorizes a jury to award plaintiffs the expenses of litigation "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff[s] unnecessary trouble and expense." "Attorney fees may be

awarded under the statute where there is bad faith in defendant's carrying out the provisions of the contract. *Where there is at least some evidence to support a claim for attorney fees under OCGA § 13-6-11, the trial judge is bound to submit the issue to the jury.*"[6]

Here, the Association improperly conditioned the combination of the Hendersons' lots on their execution of an unnecessary affidavit. After the Hendersons sued the Association, although it eventually conceded that it considered the lots combined, the Association has refused to adjust the setback lines unless and until the Hendersons resubmit their plans. Given this evidence, the trial court erred by granting summary judgment to the Association on the Hendersons' claim for attorney fees and litigation expenses under OCGA § 13-6-11.[7]

---

[6] (Footnote omitted; emphasis supplied.) *Redfearn v. Huntcliff Homes Assn., Inc.*, 243 Ga. App. 222, 226 (3) (531 SE2d 376) (2000). See also *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (3) (466 SE2d 27) (1995) (Whether to award litigation expenses under OCGA § 13-6-11 "is a question for the jury and an award will be upheld if any evidence is presented to support the award. A recovery for stubborn litigiousness or for causing the plaintiff[s] unnecessary trouble and expense is authorized where the evidence reveals no bona fide controversy or dispute with regard to the defendant's liability. Whether or not a bona fide controversy exists is normally for the jury to decide.") (citations and punctuation omitted).

[7] See *Redfearn*, 243 Ga. App. at 226 (3). The Association's argument that "a valid express contractual provision for fees preempts [OCGA] § 13-6-11" is without merit. *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (711 SE2d 639) (2011),

9

*Judgment reversed. Andrews, P. J. and Boggs, J., concur.*

---

cited by the Association, states that "'[w]here the contract provides for an award of fees, the legal principles governing an award under OCGA § 13-6-11 are . . . inapplicable.'" This holding does not support the Association's argument, but instead merely reiterates that the principles governing an award under OCGA § 13-6-11 do not apply to a contractual fee award.