**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 13, 2024**

# In the Court of Appeals of Georgia

A23A1332. COLLEGE PARK BUSINESS AND INDUSTRIAL DEVELOPMENT AUTHORITY v. COLLEGE PARK MOB, LLC.

PIPKIN, Judge.

In this dispute involving a contract for the purchase of real property, the trial court granted summary judgment to Appellee College Park MOB, LLC on their claim for specific performance against Appellant College Park Business and Industrial Development Authority ("Appellant" or "BIDA"); the trial court also granted summary judgment to Appellee on Appellant's counterclaims for breach of contract and expenses of litigation. Appellant now challenges both rulings on appeal. While we agree with Appellant that the trial court's specific performance analysis was incomplete and, thus, that summary judgment was improper on that claim, we affirm the judgment in all other respects.

1. This appeal requires us to delve into a purchase agreement for the sale of land and consider the application of two of its provisions, namely, a reconveyance provision and a right-of-first-refusal provision. To do so, we turn to the record before us, viewing it in a light most favorable to Appellant as the non-moving party.[1] See, e.g., *Latson v. Boaz*, 278 Ga. 113, 113 (598 SE2d 485) (2004). Appellant BIDA is "a constitutional development authority incorporated and chartered under Georgia law" and "is authorized [to], among other things . . . sell property to promote development within the City of College Park, Georgia." In September 2020, Appellant was approached by a real estate entity -- who was acting on behalf of a third party -- to purchase several tracts of land, most of which were then-owned by the City of College Park. Subsequently, in December 2020, Appellant entered into a "Real Property Purchase and Sale Agreement" ("Original PSA") with that third party whereby Appellant agreed to acquire, where necessary, and sell four tracts of land ("the

---

[1] For reasons that are not immediately clear, the record that was transmitted to this Court includes hundreds of additional documents filed after the summary judgment order was entered. As Appellee correctly points out, Appellant relies on this "extended" portion of the record in its brief. As we have explained before, we review only that portion of the record that was before of the trial court at the time of its decision. See *Cornwell v. Kirwan*, 270 Ga. App. 147, 151 (2) (606 SE2d 1) (2004).

Property") and offer a right of first refusal on a fifth parcel ("the Additional Property").

As relevant to this appeal, Section 8 of the Original PSA includes various "Reconveyance Rights," all of which were "to be made part of the limited warranty deed by which the Property is conveyed to the Purchaser, unless Seller receives a Lender's request to the contrary." Subdivision (F) of Section 8 included the following provision:

> Notwithstanding anything else to the contrary contained herein, the City of College Park shall not issue building permits for the Project until Purchaser provides proof that it has secured a performance bond for the Project in form and amount satisfactory to Seller to secure the faithful performance of this Agreement. *The parties agree that performance means the construction of the Project as negotiated and agreed to among the parties (see Exhibit "B").* The failure of the commencement of the entire project or the failure of completion, as set out within thirty (30) months shall be cause to involve the recapture and reconveyance of the property by the Seller.

(Emphasis supplied; hereinafter "Section 8 (F)") At the time that the Original PSA was executed, "Exhibit B" was, in effect, blank and would be supplemented at a later date.

The parties to the contract agreed to slight changes to the Original PSA twice in 2021, but the original version remained largely in force. Appellant says that, during

3

this time, the parties had extensive discussions about the right of first refusal on the Additional Property; according to Appellant, it was made abundantly clear that the City of College Park, not Appellant, owned the Additional Property and that the City was unlikely to offer it for sale. According to the executive director of BIDA, a stipend was offered to the City of College Park to relocate the office that was operating on the Additional Property, but the City rejected the proposal. In October 2021, a site plan was submitted for the Property showing that it was being developed for medical offices and retail space; according to Appellant, this site plan became Exhibit B related to Appellant's Reconveyance Rights in Section 8 (F). In late December 2021, the original third-party purchaser assigned its right to Appellee College Park MOB, LLC.

The Original PSA, as amended, set a closing date of January 9, 2022, but the parties agreed that they could not close by that date. In an apparent attempt to avoid any kind of default, the parties signed what they called a "reinstatement" agreement, which would supplant the Original PSA rather than amend it further. Consistent with this decision, the January 2022 PSA includes a merger clause, which provides that the January 2022 PSA was "the sole and entire agreement of the Parties, supersedes all prior written or oral communications relating the subject matter hereof." The January

4

2022 PSA altered some of the original terms of the parties' agreement. As relevant here, the January 2022 PSA removed from Section 8 (F) any reference to Exhibit B, which was the site plan ostensibly depicting medical offices and retail space. The right-of-first-refusal provision was also amended to include the following language: "Purchaser shall deliver to Seller a recordable Right of First Refusal Agreement for review and approval at least three (3) business days prior to closing."

In the days leading to closing, Appellee provided the necessary documents -- complete with the required signatures -- as well as all required funds. While Appellant provided a limited warranty deed to the Property, the deed included language restricting the development of the land to "the construction of a 27,000 to 40,000 sq. ft. medical office building." Appellee took issue with this language, asserting that nothing in the January 2022 PSA permitted such restrictions; Appellant did not remove the language. With respect to the Additional Property, Appellant offered only a conditional right of first refusal, which was triggered in the event that Appellant "should . . . ever acquire said property." Appellee challenged the right of first refusal offered by Appellant, too, but there was no resolution. Appellant did not appear for closing and did not complete any closing documents; the sale did not close.

In a March 2022 complaint, Appellee alleged that Appellant breached the January 2022 PSA by failing to complete and supply the necessary closing documents, by failing to deliver the appropriate warranty deed, by failing to provide proof that they had the authority to execute the PSA and convey title without the authority or consent of a third party, and by failing to provide a valid right of first refusal. Appellee sought various forms of relief including, as relevant here, specific performance. Appellant answered and asserted counterclaims against Appellee. According to Appellant, Appellee's wrongful rejection of the warranty deed "amounted to an anticipatory repudiation" of the January 2022 PSA; consequently, Appellant sought damages for breach of contract and expenses of litigation. Appellee thereafter moved for summary judgment on its claim for specific performance, as well as on Appellant's claims for breach of contract and expenses of litigation.

In response, Appellant claimed that summary judgment was precluded because there exists a "genuine issue of material fact concerning whether the parties['] intent was accurately reflected in the purchase and sale agreement due to mutual mistake." Specifically, Appellant said there was evidence that Appellee had been told "that in order to purchase the Property, [the purchasers] would need to build a 27,000-40,000

square foot medical office building" and, further, that Appellee's site plan -- which reflected specifications including 4,500 square feet in retail space and 22,660 square feet of medical space -- was an "acceptance" of those terms. Appellant also argued that there was a question of mutual mistake with respect to the right of first refusal; according to Appellant, there was evidence showing that the parties had intended the right of first refusal to be conditioned upon the City of College Park actually conveying the Additional Property to Appellant. Finally, Appellant claimed that summary judgment was inappropriate because the January 2022 PSA contained ambiguous provisions and because fact questions persisted as to whether the contract was "fair, just, or in good [conscience]."

Following a hearing, the trial court entered an order granting summary judgment to Appellee. The trial court concluded that Appellant had breached the January 2022 PSA by failing to provide a proper warranty deed, by failing to provide the right of first refusal contemplated by the agreement, by refusing to prepare the necessary closing documents, and by failing to execute the closing documents or attend closing. In granting specific performance to Appellee, the trial court concluded that the January 2022 PSA was "a written contract, supported by valuable

consideration, signed by both parties, for a definite sales price." Appellant now appeals these rulings.

2. In four different arguments, Appellant challenges the grant of summary judgment to Appellee. Before we consider each enumeration, we begin with our well-establish standard of review: "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011). On appeal from the grant of summary judgment, we apply a de novo standard of review. See *Latson*, 278 Ga. at 113.

(a) Appellant first asserts that the grant of summary judgment on Appellee's claim of specific performance was erroneous because Appellee failed to present

evidence of the value of the property.[2] We agree.

Specific performance "is not a remedy that either party can demand as a matter of absolute right and will not be granted in any given case unless strictly equitable and just." (Punctuation and footnote omitted.) *Sexton v. Sewell*, 351 Ga. App. 273, 275 (1) (830 SE2d 605) (2019). "A contract upon which specific performance is sought must be certain, definite, and clear, and so precise in its terms that neither party can reasonably misunderstand it." (Citation and punctuation omitted.) *Treadwell v. Treadwell*, 216 Ga. 156, 160 (115 SE2d 535) (1960). Further, "the court must

---

[2] Pointing to *Deal v. Dickson*, 231 Ga. 366, 367 (1) (202 SE2d 41) (1973), Appellee asserts that this argument is waived because it is being raised for the first time on appeal. While Appellee's reading of *Deal* is sound, later decisions of the Georgia Supreme Court clarify that, in the context of a specific performance claim, the value of the relevant property is a factual element which must be established by the party seeking such relief. See *Kelly v. Vargo*, 261 Ga. 422, 423 (2) (405 SE2d 36) (1991) (recognizing that "proof of value" is an "essential element" of specific performance); *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460-461 (2) (314 SE2d 874) (1984). Thus, as the party seeking summary judgment, Appellee bore the burden of pointing to evidence to support this element of its specific performance claim. "If [Appellee] failed to meet its initial evidentiary burden of proving a prima facie case, then [Appellant] [is] entitled to urge the record's lack of evidence in that regard as a reason for reversing the grant of summary judgment, even if [Appellant] did not 'object' on that precise basis in the trial court." *Dental One Assoc., Inc. v. JKR Realty Assoc., Ltd.*, 269 Ga. 616, 618 (1) (501 SE2d 497) (1998). Accordingly, we will review Appellant's argument. See *White v. State*, 305 Ga. 111, 122 n. 10 (3) (823 SE2d 794) (2019) (recognizing that, when faced with conflicting decisions from the Georgia Supreme Court, more recent decisions control).

determine that the contract is fair, just and not against good conscience." (Citation and punctuation omitted.) *Simpson v. Pendergast*, 290 Ga. App. 293, 298 (2) (c) (659 SE2d 716) (2008). Georgia appellate courts have "repeatedly held that in order for a suit for specific performance of a contract for the sale of land to prevail, the plaintiff must prove the value of the property so as to enable the court to determine that the contract was fair, just and not against good conscience." *Moody v. Mendenhall*, 238 Ga. 689, 693 (6) (234 SE2d 905) (1977).

Here, there is nothing in the trial court's order reflecting that it considered the value of the Property in granting summary judgment to Appellee on its claim for specific performance. Further, we have found nothing in the record -- and the parties have not pointed to any evidence -- which would have authorized the trial court to conclude that Appellee had met its burden of proving the Property's value. "Because that essential element is missing in the evidentiary materials before the trial court,

summary judgment should not have been granted."[3] *Kelly v. Vargo*, 261 Ga. 422, 422 (2) (405 SE2d 36) (1991).[4]

(b) Appellant's remaining claims challenge the trial court's determination that Appellant breached the January 2022 version of the PSA. According to Appellant, "the trial court ignored [Appellant's] evidence showing it did not default under [the January 2022] version of the . . . PSA" and, also, that evidence of mutual mistake precluded summary judgment. We address each in turn.

(i) As mentioned above, Section 8 (F) of the January 2022 PSA includes the following language: "The parties agree that performance means the construction of the Project as negotiated and agreed to among the parties." Relying solely on *Golden Peanut Co. v. Bass*, 275 Ga. 145 (563 SE2d 116) (2002), Appellant asserts that it was improper for the trial court to grant summary judgment on the issue of Appellant's alleged breach because, Appellant says, "the trial court needed to examine

---

[3] While Appellant asserts that this issue should be presented to a jury, "[t]he adequacy of the price is a question which generally is decided by the judge sitting as the trier of fact, given that there is no right to a jury trial in equity cases." *Johnson v. Unified Residential Dev. Co.*, 285 Ga. App. 852, 857 (4) (648 SE2d 163) (2007).

[4] We pretermit Appellant's remaining arguments concerning the grant of summary judgment on Appellee's claim of specific performance.

[Appellant's] parol evidence to determine what the parties 'negotiated and agreed to' as to the 'Project.'" However, as Appellee correctly argues, *Golden Peanut* was decided under Georgia's "Uniform Commercial Code -- Sales,"[5] see *Golden Peanut*, 275 Ga. at 148-149 (2), the application of which "is expressly limited to transactions involving the sale of goods," *Heart of Texas Dodge, Inc. v. Star Coach, LLC*, 255 Ga. App. 801, 802 (1) (567 SE2d 61) (2002). Appellant makes no attempt to explain how such a decision is applicable here and, thus, has failed to demonstrate error in this regard.[6]

Alternatively, Appellant also asserts that summary judgment was improper on the issue of breach because, Appellant says, the trial court failed to determine whether the term "Project" was ambiguous. According to Appellant, "[w]ithout Exhibit B, 'Project' is not defined in the [January 2022] PSA. The court never examined what 'Project' means or whether the parties' prior agreement clarified it or left it ambiguous. If it were the latter, and the court could not resolve the ambiguity by

---

[5] See OCGA § 11-2-101, et seq.

[6] Appellant also argues that the trial court should have considered parol evidence to discern the parties' intent concerning the right of first refusal. However, this argument, too, is supported by Appellant's reference to *Golden Peanut Co.*, and, thus, is equally meritless.

applying the rules of contract construction, [the trial court] must have given the issue to the jury." However, this argument fails. Notably, Appellant has not engaged in any contract interpretation or linguistic analysis to show how the term "Project" is ambiguous or how it should or could have been understood; instead, Appellant merely complains about the trial court's failure to expressly consider this argument and then speculates as to possible outcomes. However, "a case will not be reversed merely because error *may* have occurred." (Emphasis supplied.) *Hertz Corp. v. McCray*, 198 Ga. App. 484, 486 (2) (402 SE2d 298) (1991). Instead, "[a]n appellant must show harm as well as error to prevail on appeal[.]" *Alligood v. Piedmont Med. Care Corp.*, 369 Ga. App. 171, 172 (1) (892 SE2d 790) (2023). Because Appellant has failed to argue -- let alone demonstrate -- that the trial court's failure to consider this argument was erroneous or harmful, this claim is without merit. See Id.

(c) Finally, Appellant asserts that summary judgment is improper because there is evidence of a "mutual mistake" pertaining to the exclusion of Exhibit B and the right of first refusal. We disagree.

> A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence. Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties.

> The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake.

(Citations and punctuation omitted.) *CS-Lakeview at Gwinnett v. Simon Property Group*, 283 Ga. 426, 427 (659 SE2d 359) (2008). See also OCGA § 23-2-21. Appellant, as the party asserting the defense, bears the burden of proving mutual mistake. See *Rome Granite v. Pinnacle Bank*, 364 Ga. App. 848, 851 (1) (872 SE2d 895) (2022). See also *Cox v. Smith*, 244 Ga. 280, 282 (1) (260 SE2d 310) (1979). In order to meet this burden, Appellant must point to "evidence that both [parties] made a mutual mistake in preparation of the [January 2022 PSA] and that the [Appellant] was not so negligent in executing the instrument or in discovering any mistake appearing therein as to be estopped to ask for reformation." (Citation omitted.) *Rome Granite*, 364 Ga. App. at 851 (1). As we have explained before,

> if a party seeks to be relieved in equity, from the effect of a mistake, he must show due diligence on his part. Courts of equity grant relief only in favor of the diligent. While equity will, on seasonable application and under proper circumstances, relieve a party from the injurious consequences of an act done under a mistake of fact, it will not do so if such party could by reasonable diligence have ascertained the truth as to the matter concerning which the mistake was made.

*Harrison v. Harrison*, 368 Ga. App. 363, 369 (2) (890 SE2d 149) (2023). That said, any possible negligence on the part of Appellant will not defeat reformation where the other party has not been prejudiced. See *Ironshore Specialty Ins. Co. v. RPG Hospitality* 368 Ga. App. 199, 205 (2) (889 SE2d 394) (2023).

In its response to Appellee's motion for summary judgment,[7] Appellant argued that parol evidence created a fact question as to whether there was a mutual mistake with respect to the exclusion of Exhibit B and the right of first refusal. Appellant takes the same position on appeal and, pointing to two cases -- *Fox v. Washburn*, 264 Ga. 617 (449 SE2d 513) (1994), and *Hall v. Hall*, 303 Ga. App. 434, 435 (1) (693 SE2d 624) (2010) -- broadly argues that reversal is warranted in this because "a jury could reasonably conclude that the terms of the [January 2022 PSA] . . . did not reflect the parties agreement because of a mutual mistake." As an initial matter, both *Fox* and

---

[7] We assume for the purposes of this opinion that Appellant was entitled to raise a defense of mutual mistake for the first time in a response to a motion for summary judgment. However, our case law suggests that mutual mistake is a defense that must be pled with specificity. See *Calabro v. State Med. Educ. Bd.*, 283 Ga. App. 113, 115 (1) (640 SE2d 581) (2006); *Leventhal v. Seiter*, 208 Ga. App. 158, 163 (5) (430 SE2d 378) (1993). We also note that Appellant has failed to specify the nature of the relief it seeks. Instead, Appellant's arguments suggest that the alleged mutual mistake renders the contract "unenforceable" and that the mutual mistake entitles Appellant to both "rescission and reformation" of the January 2022 PSA.

*Hall* concern a very specific scenario, namely, the grant of summary judgment where a parent has deeded land to a child and then, years later, asserted that the parties intended for the parent to retain a life estate in the property. See *Hall*, 303 Ga. App. at 436 (1) ("The Supreme Court of Georgia [in *Fox*] determined that the grantor's testimony and the parties' conduct after the conveyance presented jury questions as to whether the conveyance failed to express the parties' actual agreement because it failed to reserve a life estate"). While these decisions may recite general principles of law concerning summary judgment and mutual mistake, they are not on all fours with this case. In short, neither *Fox* nor *Hall* are instructive or persuasive in this matter, and Appellant cites no other law concerning mutual mistake; as such, Appellant's argument does not establish trial court error.

Nevertheless, even if the decisions were authoritative -- and even if we were to accept for the purposes of this opinion that Appellant has presented parol evidence concerning some possible mutual mistake -- Appellant has wholly failed to account for, or even acknowledge, the second part of the mutual mistake analysis, namely, the question of negligence on its part or possible prejudice suffered by Appellee. This is particularly concerning here because Appellant's "mutual mistake" argument arises,

16

at least in significant part, on its assertion that BIDA's board or its representative simply *signed the wrong version of the agreement*. Indeed, at the hearing on Appellee's motion for summary judgment, Appellants asserted that, "through a mutual mistake -- and we're not really sure exactly how this all happened, but BIDA executed the wrong [PSA]." On appeal, Appellant asserts that there was "confusion" by BIDA's board concerning the January 2022 PSA and that BIDA's Board did not actually consider the proper version of the proposed January 2022 agreement. Given these circumstances, we cannot say that Appellant has demonstrated that the defense of mutual mistake precluded summary judgment.

As explained above, we reverse the judgment of the trial court with respect to the grant of specific performance, but we affirm in all other respects.[8]

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Rickman, J., concur.*

---

[8] In Division V of its brief, Appellant alleges that "the trial court's dismissal of [Appellant's] counterclaim was erroneous," claiming that Appellee repudiated the contract by failing to accept the warranty deed. This section of Appellant's brief lacks any meaningful argument -- indeed, it is only three sentences long -- and lacks any citation of authority; it is therefore deemed waived. See Court of Appeals Rule 25 (d) (1).