A08A0278. DUKE GALISH, LLC et al. v. MANTON et al.
(662 SE2d 880)

BERNES, Judge.

Appellants Duke Galish, LLC and Lanier Lodge, Inc. brought this tort action against appellees John P. Manton, his wife LaRose Manton, and the Bank of North Georgia in which they alleged that the appellees had conspired to inflate their secured claims in a bankruptcy proceeding, thereby thwarting appellants' contract for the sale of certain motel property. The trial court granted summary judgment to the appellees on the appellants' claims for tortious interference with contract and fraud. Because the appellants failed as a matter of law to show that the alleged misconduct proximately resulted in their failure to consummate the contract of sale, we affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review de novo a trial court's grant of summary judgment. *Stultz v. Safety & Compliance Mgmt.*, 285 Ga. App. 799, 800 (648 SE2d 129) (2007). "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citations omitted.) *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994).

Viewed in this light, the record reflects that appellant Lanier Lodge, Inc. was a closely held business that owned and operated a motel in Forsyth County for almost two decades (the "Motel Property"). In 1996, in order to refinance the Motel Property, Lanier Lodge obtained a loan from appellee Bank of North Georgia ("BNG") in the principal amount of $2,000,000 plus interest. To secure payment of the loan, BNG obtained a first priority security interest in the Motel Property and two other adjacent tracts of land owned by Lanier 400, an entity related to Lanier Lodge.

Originally, Lanier Lodge was co-owned by Gary Anglin and appellee Jack Manton. In 2001, Manton sold all of his shares and interest in Lanier Lodge to Anglin and his family in return for $75,000 in cash and a promissory note in the principal amount of $415,000 plus interest. The promissory note was executed by Lanier Lodge and the Anglins. To secure payment, Manton was granted a second priority security interest in the Motel Property.

In January 2003, Lanier Lodge ceased operating its motel business as a result of increasing financial problems that prevented it from paying its creditors. A few months later, Manton brought suit against Lanier Lodge and the Anglins for breach of the promissory note in the Superior Court of Forsyth County (the "Forsyth Litigation"). Shortly thereafter, BNG sent Lanier Lodge an acceleration letter giving notice that Lanier Lodge had defaulted on its loan payments and that BNG intended to foreclose on the Motel Property and the two adjacent tracts owned by Lanier 400 on October 7, 2003 unless Lanier Lodge paid back its loan in full.

On October 6, 2003, Lanier Lodge filed a voluntary petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court, Northern District of Georgia, to avoid foreclosure of the Motel Property. In contrast, Lanier 400 did not file for bankruptcy, and BNG foreclosed on the two Lanier 400 tracts and acquired title to them at the foreclosure sale. BNG subsequently sold one of those two tracts to appellee LaRose Manton. After the sale to Manton, there remained a balance due on the loan to Lanier Lodge in excess of $1,000,000.

On November 20, 2003, Manton filed his proof of claim in the bankruptcy court. He claimed that he was currently owed

$479,620.16 on the promissory note with interest still accruing and further noted that his claim for indebtedness was the subject of the pending Forsyth Litigation. Lanier Lodge never filed an objection to Manton's proof of claim.

On March 9, 2004, the superior court in the Forsyth Litigation entered a consent judgment under which Manton agreed to a full settlement of his claims on the promissory note if the Anglins paid him $400,000 within 120 days (the "Consent Judgment"). The Consent Judgment provided that if the Anglins failed to meet these payment requirements, Manton would be entitled to entry of judgment for the full amount owed under the promissory note. The Consent Judgment also stated that "[t]here is no entry of judgment at this time against Defendant Lanier Lodge, Inc., since this defendant is in the midst of a bankruptcy proceeding."

Following the entry of the Consent Judgment in the Forsyth Litigation, Lanier Lodge filed a motion seeking authorization from the bankruptcy court to sell the Motel Property to appellant Duke Galish, LLC, a company also owned by the Anglins. Attached to the motion was an "Agreement for Purchase and Sale of Real Property" executed by Lanier Lodge and Duke Galish (the "Purchase Agreement").

Under the Purchase Agreement, Duke Galish agreed to purchase the Motel Property from Lanier Lodge for $1,700,000. Duke Galish planned to redevelop the Motel Property into office condominiums. The Purchase Agreement contained several conditions, including that the purchase was "specifically subject to [Duke Galish] being able to obtain a building permit for modifying the existing premises into office premises from all appropriate governmental authorities." The Purchase Agreement also stated that the sale was subject to approval by the bankruptcy court.

On March 15, 2004, the bankruptcy trustee filed an objection to Lanier Lodge's motion for authorization to sell the Motel Property to Duke Galish. The trustee objected to the sale for several reasons, including that the sale appeared to be an "attempt to convey the Property free and clear of liens to an affiliate owned and controlled by insiders without having first exposed it to the market."

During the pendency of its motion to sell, Lanier Lodge requested that Manton and BNG provide written confirmation of the amounts they required as their payoffs on their secured claims. Manton replied that he was standing firm on his original proof of claim for the full amount owed under the promissory note, minus the $50,000 already paid to him by the Anglins under the Consent Judgment. In turn, BNG wrote a letter to Lanier Lodge stating that the payoff amount "[f]or purposes of the pending contract for sale only [between Lanier Lodge and Duke Galish], as of April 28, 2004,"

would be $1,121,151.15. The payoff amount included BNG's actual attorney fees to date. BNG's payoff letter also provided that "[n]othing herein is or shall be construed as a waiver or forfeiture of any of [BNG's] rights or remedies, all of which are expressly reserved."

Following its receipt of these written confirmations and the trustee's motion opposing the sale, Lanier Lodge withdrew its motion for authorization to sell the Motel Property to Duke Galish. Lanier Lodge also chose not to object to the conversion of the case from Chapter 11 to Chapter 7 of the Bankruptcy Code. Thereafter, on April 22, 2004, the bankruptcy court entered an order converting the case to one under Chapter 7.

On April 30, 2004, BNG filed its proof of claim in the bankruptcy case. In contrast to the payoff letter previously sent to Lanier Lodge, BNG now claimed that it was entitled to statutory attorney fees under OCGA § 13-1-11 (a) rather than its actual attorney fees, which increased the total indebtedness on the Motel Property by approximately $145,000 more than the original payoff letter. Lanier Lodge never filed an objection to the proof of claim.

On May 3, 2004, BNG filed a motion for relief from the automatic bankruptcy stay in order to be allowed to conduct a foreclosure sale of the Motel Property. Lanier Lodge did not file an objection to the motion. On June 1, 2004, the newly appointed Chapter 7 bankruptcy trustee held the first creditors' meeting, where he addressed whether he would object to the lifting of the automatic stay.

At the creditors' meeting, Duke Galish was still willing to purchase the Motel Property from Lanier Lodge for $1,700,000 under the same terms and conditions found in the original Purchase Agreement. When asked by the trustee about contingencies remaining on the Purchase Agreement, the Anglins stated that the building permit contingency had not been met for the redevelopment of the Motel Property. During the course of the hearing, the trustee announced that he would not conduct a sale of the Motel Property to Duke Galish for $1,700,000 because that amount was not enough to pay off the secured creditors' claims and produce any return for the bankruptcy estate. The trustee also noted that the building permit contingency had not been satisfied and that he was "reluctant to hold [BNG] off any longer." Consequently, the trustee concluded that he would not accept an offer to sell with any remaining contingencies and stated that he would not oppose the lifting of the automatic stay. Following the hearing, the bankruptcy court entered an order granting BNG's motion for relief from the automatic bankruptcy stay after noting that the trustee did not oppose the motion.

On July 6, 2004, BNG conducted a foreclosure sale, credit bid on the Motel Property, and acquired title to it. The next month, in a deal

facilitated by Jack Manton, Forsyth County entered into agreements to purchase the Motel Property from BNG and the adjacent tract of land from LaRose Manton. On August 27, 2004, Forsyth County closed on and acquired title to the Motel Property and the adjacent tract of land, which the county later redeveloped into a juvenile courthouse and government office complex. At the closing on the Motel Property, Jack Manton received a consultation fee for orchestrating the deal.

After the closings, the appellants commenced the instant action against the appellees, alleging that the appellees had committed fraud and tortiously interfered with the Purchase Agreement under which Duke Galish was to buy the Motel Property for $1,700,000.[1] According to the complaint, after the conversion of the bankruptcy case to Chapter 7, Jack Manton fraudulently failed to amend and reduce his original proof of claim for the full amount owed on the promissory note, even though the parties had previously settled that claim for the fixed amount of $400,000 in the Forsyth Litigation. The complaint also alleged that BNG had filed a false proof of claim asserting a frivolous claim for statutory attorney fees, even though BNG in its April 14, 2004 payoff letter had only claimed actual attorney fees. As a result of these actions, the appellants alleged that the payoff amounts of the secured claims on the Motel Property were falsely inflated such that Duke Galish's offer to purchase the Property for $1,700,000 was too low to pay off the secured claims, which in turn led the Chapter 7 trustee and bankruptcy court to not approve of the purchase. According to the complaint, the appellees conspired together to thwart the consummation of the Purchase Agreement and bring about the foreclosure because they wanted to sell the Motel Property and the adjacent tract owned by LaRose Manton as a package deal to Forsyth County for a premium. Finally, the complaint alleged that if the appellees' secured claims had not been artificially inflated, the Purchase Agreement would have been consummated.

The appellees moved for summary judgment on multiple grounds. Among other things, they alleged that summary judgment was appropriate because the appellants were essentially seeking to recover for the filing of false proofs of claim, for which there allegedly was no private right of action available; the Purchase Agreement was not valid and enforceable; there was no evidence of false representations or fraudulent intent; the appellees were not strangers to the

---

[1] The complaint also included a claim against Jack Manton for breach of contract, as well as claims for attorney fees and punitive damages. The trial court's order did not address those claims, which remain pending in the court below.

YALE LAW LIBRARY

Purchase Agreement; and proximate cause could not be established. After conducting a hearing and reviewing the voluminous record, the trial court granted summary judgment to the appellees on the tortious interference and fraud claims.

1. The appellants contend that the trial court erred in granting summary judgment on their claim for tortious interference with contract. We disagree because the appellants failed as a matter of law to establish that the alleged misconduct proximately caused their injury.

> The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Dalton Diversified v. AmSouth Bank*, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004). Hence, if a plaintiff cannot "show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference," his claim for tortious interference fails as a matter of law. *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 259 (4) (345 SE2d 924) (1986). And, any damage claimed to have been suffered by a plaintiff does not proximately result from the defendants' alleged misconduct, if the damage would have occurred notwithstanding their misconduct. *Combs v. Atlanta Auto Auction*, 287 Ga. App. 9, 14 (3) (650 SE2d 709) (2007); *Parris v. Pledger Ins. Agency*, 180 Ga. App. 437, 439 (2) (348 SE2d 924) (1986); *Hollingsworth v. Harris*, 112 Ga. App. 290, 293 (145 SE2d 52) (1965); *Western & Atlantic R. v. Crawford*, 47 Ga. App. 591, 593 (1) (170 SE 824) (1933). See *Hylton v. American Assn. &c.*, 214 Ga. App. 635, 638 (2) (448 SE2d 741) (1994) (plaintiff failed to establish proximate cause on his tortious interference claim, when the uncontroverted evidence showed that his contract of employment would not have been renewed, even absent the defendants' alleged misconduct). The question of proximate cause may be decided by the court as a matter of law in plain and indisputable cases. *Thomas v. Food Lion*, 256 Ga. App. 880, 883 (1) (570 SE2d 18) (2002).

Here, the appellants cannot establish that the appellees' allegedly fraudulent secured creditor claims proximately resulted in the

failure to consummate the Purchase Agreement. As noted, the Purchase Agreement provided that the purchase of the Motel Property was "specifically subject to [Duke Galish] being able to obtain a building permit for modifying the existing premises into office premises from all appropriate governmental authorities." But, the appellants have failed to come forward with any evidence to show that this contingency was or could have been met.[2] Indeed, at the Chapter 7 creditors' meeting, the Anglins noted that building permits for the redevelopment of the Motel Property into office condominiums had not been obtained. And, the trustee was unwilling to accept any offers to purchase the Motel Property that had any remaining contingencies. Given this uncontroverted record, it is clear that even if the appellees had not purportedly inflated their secured claims, the sale of the Motel Property to Duke Galish would not have occurred due to the unfulfilled building permit contingency. Accordingly, the appellants failed to establish the essential element of proximate cause, rendering summary judgment appropriate on their tortious interference claim. See *Combs*, 287 Ga. App. at 14 (3); *Hylton*, 214 Ga. App. at 638 (2); *Parris*, 180 Ga. App. at 439 (2); *Carter*, 179 Ga. App. at 259 (4); *Hollingsworth*, 112 Ga. App. at 293; *Western & Atlantic R.*, 47 Ga. App. at 593 (1).

2. The appellants also argue that the trial court erred in granting summary judgment on their fraud claim. Again, we disagree. As with tortious interference, an essential element of a fraud claim is proximate cause. *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 772 (572 SE2d 334) (2002). For the same reasons discussed in Division 1, the appellants likewise cannot establish proximate cause on their fraud claim as a matter of law. It follows that summary judgment was appropriate on this claim as well. See generally *Pendley Quality Trailer Supply v. B & F Plastics*, 260 Ga. App. 125, 126-127 (1) (578 SE2d 915) (2003) (summary judgment proper on fraud claim when plaintiff failed to show that its damages were sustained as the result of the defendant's alleged misconduct).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JUNE 5, 2008.

*Perrell & Wright, Charlotte K. Perrell*, for appellants.

---

[2] In the court below, the appellants asserted that because Forsyth County ultimately redeveloped the Motel Property into a juvenile courthouse and government complex, Duke Galish would have been able to secure the necessary building permits to convert the motel into office condominiums. The appellants' assertion, however, was purely speculative, and proximate cause cannot be established by mere speculation and conjecture. See *Grinold v. Farist*, 284 Ga. App. 120, 121-122 (1) (643 SE2d 253) (2007).

*Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley, Ronald E. Houser, Kenneth R. Ozment*, for appellees.