### A08A1579. DENNIS et al. v. FIRST NATIONAL BANK OF THE SOUTH.

(668 SE2d 479)

BERNES, Judge.

Appellants Melvene and Willie Dennis brought this tort suit against appellee First National Bank of the South in which they alleged that First National committed fraud and conversion by breaching a promise to cancel a debt. The trial court granted summary judgment to First National on both claims, resulting in this appeal. For the reasons discussed below, we affirm the grant of summary judgment with respect to appellants' fraud claim, but reverse with respect to their conversion claim.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a trial court's grant of summary judgment is de novo. *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 828 (662 SE2d 880) (2008). We will affirm the grant of summary judgment if right for any reason, see id., but this rule is subject to the important caveat that an "appellate court generally will not affirm [the] grant of summary judgment on [a] ground not raised below." *Young v. Oak Leaf Builders*, 277 Ga. App. 274, 278 (2), n. 11 (626 SE2d 240) (2006).

Viewed in this manner, the record shows that appellants' principal residence was located on real estate they owned in Baldwin County (the "Property"). On April 26, 1993, First National agreed to loan appellants approximately $35,000, memorialized in a promissory note and deed to secure debt granting First National a second

position security interest in the Property.[1] The deed to secure debt contained a provision stating that the deed would secure any and all renewals of the note as well as any other indebtedness incurred by appellants.

The promissory note executed by appellants in favor of First National was renewed on July 27, 1999. At the time of the renewal, the loan balance had increased to the principal amount of $38,205.79 and was payable in 35 consecutive monthly installments. The loan balance, including the principal plus 10.5 percent annual interest, was to be paid in full on or before June 20, 2002. The renewed note stated that it was secured by the previously executed deed to secure debt on the Property. The note also contained an acceleration clause providing that upon default, First National was entitled to "demand immediate payment of all [amounts owed] under [the] note (principal, accrued unpaid interest and other accrued charges)."

It is undisputed that appellants were delinquent in their payments to First National. On May 23, 2002, First National notified appellants by letter that they were in default under the renewed note and that, pursuant to the acceleration clause contained in the note, First National had elected to declare the entire unpaid balance of principal and interest immediately due and payable. The letter further notified appellants that the unpaid balance of the note, including principal, accrued interest, and late charges (excluding attorney fees) was $40,614.75 as of that date. Finally, the letter advised appellants that if their default continued, First National would exercise its power of sale found in the deed to secure debt and that a foreclosure sale of the Property would take place on July 2, 2002.

The scheduled foreclosure sale ultimately was canceled, but the parties disagree over the circumstances surrounding the cancellation. According to appellants, on the day of the foreclosure sale, Mr. Dennis delivered to First National a cashier's check in the amount of $20,000, together with a check from one of his friends and business acquaintances, Jerry McRee, in the amount of $18,205.79. Appellants contend that in return for the tender of the two checks totaling $38,205.79 (representing the principal unpaid balance of the renewed note excluding interest and late charges), First National promised that it would mark the renewed note as satisfied and cancel the deed to secure debt on the Property.

In contrast, First National claims that it never agreed to cancel the debt owed by appellants. Rather, First National contends that

---

[1] The loan also was secured by a separate, undeveloped parcel owned by appellants, but that property is not at issue in this case.

the two checks were delivered to the bank as part of a transaction under which it agreed to transfer and assign the renewed note and deed to secure debt on the Property to McRee. According to First National, McRee wanted to purchase the debt in order to forestall the foreclosure and prevent appellants from having to vacate their home. As part of the transaction, the $20,000 cashier's check was to be applied to a reduction in the amount of indebtedness, while the check from McRee was to serve as consideration paid to First National for assigning him the promissory note and deed to secure debt.[2]

Irrespective of what promises were allegedly made by First National, the uncontroverted record reflects that First National did in fact assign the renewed note and deed to secure debt on the Property to McRee. McRee then assigned the renewed note and the deed to secure debt to another entity, Sportsman Club Properties, LLC. Sportsman Club notified appellants of the assignment and advised them of the outstanding debt they needed to satisfy in order to avoid a foreclosure sale of the Property.

Appellants made no more payments on the debt. Sportsman Club subsequently foreclosed on the Property and bought it at the foreclosure sale. When appellants refused to deliver possession of the Property, Sportsman Club instituted dispossessory proceedings and obtained a writ of possession.

In June 2006, appellants commenced the instant tort action against First National and McRee, asserting claims of fraud, conversion, and imputed liability.[3] Specifically, Count 1 of the complaint alleged that First National committed fraud by breaching its purported promise to cancel the debt owed by appellants in return for the two checks totaling $38,205.79 that had been tendered to First National. Count 2 alleged that First National converted the $20,000 cashier's check tendered to it by Mr. Dennis. Finally, Count 3, entitled "Doctrine of Imputation of Liability," alleged that First National and McRee were liable to appellants "under the doctrines of joint enterprise, principal-agent, master-servant, and apparent authority."

First National moved for summary judgment on all three of appellants' claims. According to First National, appellants could not recover against First National on any of their claims for two reasons. First, the claims were barred by the doctrines of res judicata and collateral estoppel in light of the dispossessory proceeding that

---

[2] First National also contends that the check from McRee was in the amount of $22,800, not $18,205.79 as alleged by appellants.

[3] Appellants' claims against McRee remain pending in the court below.

YALE LAW LIBRARY

Sportsman Club successfully litigated against appellants. Second, the claims failed because there was no consideration for the alleged agreement of First National to cancel the debt for an amount less than the total amount owed by appellants. The trial court granted First National's motion in a summary order. This appeal followed in which appellants challenge the grant of summary judgment on their fraud and conversion claims.[4]

1. *Res Judicata and Collateral Estoppel.* Appellants are correct that the doctrines of res judicata and collateral estoppel do not bar their claims. The doctrines cannot be applied in this case because First National was neither a party nor the privy of a party involved in the dispossessory proceeding.

"The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865 (1) (463 SE2d 5) (1995). See OCGA § 9-12-40. The related doctrine of collateral estoppel, which "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action," also requires identity of the parties or their privies in the former and pending actions. *Waldroup*, 265 Ga. at 866-867 (2).

First National argued in the court below that appellants' claims were barred by the doctrines of res judicata and collateral estoppel because the core issues raised in the instant case were resolved in favor of Sportsman Club in the prior dispossessory proceeding. First National further argued that it was in privity with Sportsman Club and thus was entitled to assert the doctrines in this case. We are unpersuaded.

"Privity is established where a party's interests are fully congruent with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." (Citation and punctuation omitted.) *Seay v. Roberts*, 275 Ga. App. 295, 296 (620 SE2d 417) (2005). A privy includes one who acquires an interest in the property affected by a judgment subsequent to the commencement of the action wherein the judgment was rendered. See *Smith v. Nasserazad*, 247 Ga. App. 457, 458-459 (3) (544 SE2d 186) (2001) ("[A] privy is one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase, or assignment.") (punctuation

---

[4] Appellants do not enumerate as error the grant of summary judgment on their imputed liability claim.

and footnote omitted). See also *Seay*, 275 Ga. App. at 297; *Lay Bros. v. Tahamtan*, 236 Ga. App. 435, 436 (511 SE2d 262) (1999); *Morris v. Ga. Power Co.*, 65 Ga. App. 180, 187-189 (15 SE2d 730) (1941); Restatement (Second) of Judgments § 43 (1982).[5]

In contrast, privity status does not extend

> to a predecessor in interest of a person who is a party to an action concerning property. His successor in interest is not his representative. When the owner of property transfers it to another, in general he ceases to be burdened with the legal responsibilities that attend its ownership.

Restatement (Second) of Judgments § 43, comment e. Hence, where a person transfers his or her interest in the subject property prior to the commencement of the action wherein the judgment affecting the property was rendered, the person is not in privity with the parties involved in that action. See *Yeiser v. GMAC Mtg. Corp.*, 535 FSupp.2d 413, 423 (II) (A) (S.D. N.Y. 2008) (res judicata did not bar claims brought against a defendant that had transferred its interest in the subject mortgage prior to the foreclosure proceeding wherein the judgment was rendered); *Council v. Better Homes Depot*, No. 04 CV 5620 (NGG) (KAM), 2006 U. S. Dist. LEXIS 57851, at *14-15 (III) (A) (1) (a) (E.D. N.Y. Aug. 16, 2006) (same).

In light of these principles, it is clear that First National was not the privy of Sportsman Club. First National transferred its interest in the Property long before the dispossessory proceeding litigated between Sportsman Club and appellants, and, therefore, had no stake or interest in the outcome of that proceeding. It follows that the doctrines of res judicata and collateral estoppel could not be applied to bar appellants' claims in the pending action, and that summary judgment should not have been granted to First National based upon those doctrines.

2. *Lack of Consideration.* Nevertheless, summary judgment in favor of First National was appropriate as to appellants' fraud claim because the alleged representation was unenforceable due to a lack of consideration. But, First National has failed to show how a lack of consideration entitled it to summary judgment on appellants' con-

---

[5] Restatement (Second) of Judgments § 43 provides in relevant part:
> A judgment in an action that determines interests in real or personal property:
>> (1) With respect to the property involved in the action:
>>> (a) Conclusively determines the claims of the parties to the action regarding their interests; and
>>>> (b) Has preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself.

version claim.

(a) *Fraud.* "The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." (Citation omitted.) *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000). "[T]here can be no justifiable reliance on a promise which is unenforceable at the time it is made." *Hodge Residential v. Bankers First Fed. &c. Assn.*, 199 Ga. App. 474, 476 (2) (a) (405 SE2d 302) (1991). This includes a promise unenforceable for lack of consideration. See *Phillips v. Atlantic Bank & Trust Co.*, 168 Ga. App. 590, 591 (1) (b) (309 SE2d 813) (1983) (holding that alleged promise not to foreclose could not support fraud claim because it was "nothing more than an unenforceable, broken promise, unsupported by consideration"); *Willis v. Rabun County Bank*, 161 Ga. App. 151, 153 (3) (291 SE2d 52) (1982) (holding that summary judgment was appropriate where plaintiff's fraud claim was predicated on an alleged promise to release a security deed that was unenforceable for lack of consideration).

Appellants contend that First National defrauded them by orally promising that in return for the delivery of the two checks totaling $38,205.79, First National would cancel the debt owed by appellants that was secured by the Property. It is undisputed that the amount claimed to have been tendered by appellants, however, represented less than the full amount of the debt owed by them at that time. Rather, the $38,205.79 represented the principal unpaid balance of the renewed note, excluding the interest and late charges that already had accrued.

"The partial payment of a debt already owed, that was not doubtful but certain, provides no new consideration, because it is a promise to do what one is legally bound to do already. Thus, an oral agreement to release a debt without new consideration is not enforceable." (Emphasis omitted.) *NationsBank, N. A. v. Tucker*, 231 Ga. App. 622, 626-627 (4) (500 SE2d 378) (1998). The alleged oral promise of First National to release appellants' debt in return for less than the amount owed on the renewed note was without consideration, and, therefore, was unenforceable. As such, appellants could not reasonably rely upon that promise, and summary judgment thus was appropriate on appellants' fraud claim. See *Phillips*, 168 Ga. App. at 591 (1) (b); *Willis*, 161 Ga. App. at 153 (3).

(b) *Conversion.* In its motion for summary judgment, First National did not specifically address appellants' claim of conversion, but instead asserted without argument or authority that lack of consideration barred all of appellants' claims. Conversion, however, is a distinct tort from fraud with its own unique elements. See

*Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 454 (615 SE2d 120) (2005) ("In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.") (citation and punctuation omitted). Because First National's argument concerning lack of consideration related only to the fraud claim, the trial court erred in also granting summary judgment to First National on the conversion claim. See *Young*, 277 Ga. App. at 278 (2) (holding that trial court erred in granting summary judgment on plaintiffs' negligence claim where defendant's arguments raised in its summary judgment motion only related to plaintiffs' contract claim). See also *Cox v. Edelson*, 243 Ga. App. 5, 7-8 (1) (530 SE2d 250) (2000); *Frank Woods Constr. Co. v. Randi*, 177 Ga. App. 438, 439 (2) (339 SE2d 406) (1986).

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 8, 2008.

*Clifton Boone*, for appellants.
*Martin Snow, John T. McGoldrick, Jr.*, for appellee.