**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 2, 2013**

# In the Court of Appeals of Georgia

A13A0157.  TRIBECA  HOMES,  LLC  v.  MARATHON  DO-008
        INVESTMENT CORP. et al.

DOYLE, Presiding Judge.

Tribeca Homes, LLC ("Tribeca"), filed suit against Marathon Investment Corp., Dan West, Audrey Akpan, and others, alleging tortious interference with business relations and violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO"), OCGA § 16-14-1 et seq.[1] Tribeca appeals the trial court's order granting the defendants' motions for summary judgment. For the reasons that follow, we affirm.

---

[1] The trial court later added the Fulton County/City of Atlanta Land Bank Authority, Inc., ("the Land Bank") as a necessary party in interest, but Tribeca does not appeal the grant of summary judgment to the Land Bank.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record[3] shows that on August 6, 1970, Johnny Bentley, Jr., was deeded a lot at 9 Branham Street, Atlanta, in DeKalb County. Thereafter, Bentley failed to pay property taxes on the property, and on May 28, 1974, the City of Atlanta took possession of the property after a sheriff's sale. On October 31, 2001, the Land Bank took title to 9 Branham Street as part of a program in which the Land Bank collected underperforming parcels owned by different government bodies and disbursed them in order to generate taxable property on the parcels.[4] The Land Bank

---

[2] (Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] We note that in many instances, both Tribeca's and Marathon's briefs either lack appropriate page citations in support of factual assertions or lack any citation at all. See Court of Appeals Rule 25 (c) (3) (iii); *Latimore v. City of Atlanta*, 289 Ga. App. 85, 86 (1) (656 SE2d 222) (2008).

[4] See generally OCGA §§ 48-4-60 et seq.; 48-4-100 et seq.

was headed by a four-person Board of Directors, and its Executive Director at the time was Audrey Akpan.

In 2006, Jason Strickland formed Tribeca Homes in order to build low- to moderate-income housing primarily in the City of Atlanta to address the need for such housing near the City. And in late 2006, Tribeca applied to acquire 9 Branham Street from the Land Bank in order to build a single family residence on the parcel. In mid-2007, an unrelated party, Reynoldstown Revitalization Corp., also applied for the same property.

On May 31, 2007, Mamie Bentley, the surviving heir of Johnny Bentley, Jr., quit-claimed any remaining interest she held in 9 Branham Street to Marathon, which is owned by defendant Dan West. On June 4, 2007, Marathon attempted to redeem the property and requested that the Land Bank transfer the deed for 9 Branham Street to it, and Marathon tendered to the Land Bank $5,087.14 and Mamie Bentley's quitclaim deed to the property. Thereafter, on August 22, 2007, the Land Bank deeded 9 Branham Street to Marathon.[5]

Following the deed of property to Marathon, Tribeca filed the instant action alleging that Marathon and West had bribed Akpan in order to receive numerous

_____

[5] See OCGA § 48-4-48.

3

properties including 9 Branham Street; that West knowingly committed fraud by illegally redeeming the property pursuant to OCGA § 48-4-48;[6] and that Akpan only recommended that the Board of the Land Bank deed properties to those individuals who were providing her with bribes. In support of its case, Tribeca produced deposition testimony of various individuals with previous connections to Marathon and the Land Bank, as well as two emails referencing assistance payments from Marathon and West to Akpan.[7] In a cursory order, the trial court granted summary judgment to the defendants.

1. Tribeca contends that the trial court erred by granting summary judgment as to the RICO action. We disagree.

> As a mandatory condition to asserting the RICO claims, [Tribeca] must show a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [it] purportedly sustained.

---

[6] Tribeca argues that the redemption was invalid or illegal because the right to redeem the property expired after the 1974 tax sale. See *BX Corp. v. Hickory Hill 1185, LLC*, 285 Ga. 5, 7-8 (673 SE2d 205) (2009). Compare with *Moultrie v. Wright*, 266 Ga. 30, 31-32 (1) (464 SE2d 194) (1995), superceded by statute as stated in *Community Renewal & Redemption, LLC v. Nix*, 279 Ga. 840, 842 (1) (621 SE2d 722) (2005).

[7] The defendants dispute the authenticity of the emails and produced a computer forensics expert to provide support for their argument that the emails were altered by a third party to include the language about assistance payments.

Specifically, a private plaintiff under the RICO Act must show that the injury suffered flowed directly from the predicate offense. In other words, [Tribeca] must show that [its] injury was caused by reason of a violation of one of the specific crimes listed in OCGA § 16-14-3 (9) (A).[8]

Even taking all the allegations of bribery, fraudulent statements, and other misdeeds as true, Tribeca is unable to establish that the trial court erred by granting summary judgment on its RICO claim because it was merely an applicant for grant of the property, so the company cannot show direct harm from the Land Bank's transfer of 9 Branham to Marathon.[9] In support of its argument, Tribeca cites to *Schoenbaum Limited Co., LLC v. Lenox Pines, LLC*,[10] in which this Court held that questions of fact existed with regard to any direct harm suffered by the plaintiff.[11] In that case, however, the parties had an existing real estate development contract when

---

[8] (Footnotes and punctuation omitted.) *Nicholson v. Windham*, 257 Ga. App. 429, 430 (1) (571 SE2d 466) (2002).

[9] Compare with *Schoenbaum Limited Co., LLC v. Lenox Pines, LLC*, 262 Ga. App. 457, 471 (8) (c) (holding that a question of fact existed as to whether defendants' alleged predicate acts directly injured plaintiff under the parties' real estate development contract after defendants forced plaintiff out of further development of the property).

[10] Id.

[11] See id. at 470-471 (8) (c).

5

the defendants allegedly engaged in the predicate illegal acts and forced plaintiff out of further development of the property. In this case, on the other hand, no such contract existed between Tribeca and the Land Bank, and even if Marathon had not redeemed the property and even if no other entities applied for 9 Branham Street, Tribeca was not assured of receiving the property.

2. For very similar reasons, Tribeca's challenge to the trial court's grant of summary judgment as to its claim for tortious interference with business relations also fails.

> The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. Hence, if a plaintiff cannot show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference, his claim for tortious interference fails as a matter of law. And, any damage claimed to have been suffered by a plaintiff does not proximately result from the defendants' alleged misconduct, if the damage would have occurred notwithstanding their misconduct. The question of proximate

6

cause may be decided by the court as a matter of law in plain and indisputable cases.[12]

In this case, as in *Duke Galish* quoted above, Tribeca failed to establish that Marathon's or Akpan's misdeeds was the proximate cause of his damage because he cannot show that independent of those actions he would have secured the property from the Land Bank.[13] As stated in OCGA § 48-4-63 (b) (4), the Land Bank "shall have the power to manage, maintain, protect, rent, lease, repair, insure, alter, sell, trade, exchange, or otherwise dispose of any property *on terms and conditions determined in the sole discretion of the authority*."[14] Because the Land Bank was under no obligation to grant 9 Branham Street to Tribeca even if no other entities

---

[12] (Citations and punctuation omitted.) *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832 (1) (662 SE2d 880) (2008), subsequent history at 308 Ga. App. 316 (707 SE2d 555) (2011).

[13] See *Duke Galish, LLC*, 291 Ga. App. at 832-833 (1) (purchase agreement's unfulfilled contingency to obtain building permits established as a matter of law that any allegedly fraudulent action by the creditor was not the proximate cause of any failure to consummate the purchase agreement; thus, tortious interference claim failed as a matter of law, and any assertion that the plaintiff could have secured the building contracts was too speculative to support the claim).

[14] (Emphasis supplied.)

7

applied for the parcel, Tribeca is unable to establish that any alleged wrongdoing of Marathon, West, or Akpan was the proximate cause of any injury to him.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*