**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 22, 2017**

# In the Court of Appeals of Georgia

A17A0389. SWANSON TOWING & RECOVERY, LLC et al. v.   DO-015
    WRECKER 1, INC., et al.

DOYLE, Chief Judge.

Wrecker 1, Inc., and its owner, Stacy Richardson, (collectively, "the plaintiffs")
sued Swanson Towing & Recovery, LLC; Nick Group, LLC; Sarah Cha; and Amanda
McCallister (collectively, "the defendants") for tortious interference with business
relations, libel, and slander. The defendants moved for summary judgment, and the
trial court denied the motion, certifying its ruling for immediate review.[1] This Court
granted the defendants' application for interlocutory review, and this appeal followed.

---

[1] The trial court granted summary judgment to the defendants as to Richardson's
individual claim for tortious interference with business relations. That ruling is not at issue
in this appeal.

Because the defendants were entitled to judgment as a matter of law, we reverse the trial court's denial of their summary judgment motion.

"'On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.'"[2]

So viewed, the relevant facts show that for several years, Steve Richardson operated a towing company called Silent Night Recovery and Transport, Inc., the sole business of which was non-consensual towing. In 2007, pursuant to a consent agreement with Silent Night, the Public Service Commission ("the PSC") revoked Silent Night's permit to conduct non-consensual towing, imposed a fine against Silent Night, and ordered it to pay restitution to consumers. In a press release, the PSC noted that "Silent Night had violated state law and Commission rules, including providing false business addresses, improper signage, failing to file proof of proper insurance with the Commission[,] and exceeding the maximum tariff rate approved by the Commission."

---

[2] *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Community Trust*, 298 Ga. 221, 224 (1) (b) (780 SE2d 311) (2015), quoting *Giles v. Swimmer*, 290 Ga. 650 (1) (725 SE2d 220) (2012).

2

Around the same time, in January 2007, Steve's wife, Stacy Richardson, incorporated her own towing company, Wrecker 1. Steve worked for Wrecker 1, advised Stacy with respect to the business, and advocated for the company with government entities including the PSC. Initially, Wrecker 1 only provided consensual towing services – towing requested by the vehicle's owner. In 2009, however, Stacy, with assistance from Steve, sought to be added to Henry County's list of approved towing services for non-consensual tows requested by public officials.[3] In May 2011, Wrecker 1 was added to the County's approved list. At that time, only two other companies were on the list, one of which was Swanson.[4]

According to the defendants, the addition of Wrecker 1 to the County list of approved wreckers was financially devastating. Both Sarah Cha, the owner of Swanson, and Amanda McCallister, a long-term employee of the company, sent

---

[3] Pursuant to Henry County Wrecker Ordinance 08-03, ch. 3-4, art. III, § 3-4-334, a copy of which appears in the record, the County maintained a list approved wrecker companies and had a "Wrecker Services Committee" that enforced the ordinance provisions, accepted applications and added qualified wreckers, and revoked or suspended wrecker companies if appropriate after a due cause hearing. The Committee was authorized to enforce a fee schedule that approved wrecker companies could charge.

[4] Before Wrecker 1 was added to the list, Swanson conducted tows in the northern portion of the county, and a separate company – Elkins – operated in the southern portion. Once Wrecker 1 was added to the list, they shared tows in the northern portion with Swanson.

3

correspondence to the County manager and various County commissioners to complain about the financial hardship.[5] Several of the messages also conveyed complaints received about Wrecker 1's business integrity and billing habits. In one, McCallister wrote "I don't see how Wrecker 1 can even call themselves an upstanding company." In another, she wrote that Wrecker 1

> has no morals [and] no regard for the Citizens of Henry County. . . . [Wrecker 1] used to be under the name "Silent Knight [sic] Towing and got in HOT water with the [PSC] . . . so they changed their name to Wrecker 1. . . . [Wrecker 1] continue[s] to overcharge on 95% of their calls. . . . We would think that the people [and] officials of Henry County would want valuable wrecker services dealing with their citizens . . . not a mean, vulgar, demeaning[] crook like Steve [and] Stacy Richardson of Wrecker 1.

Cha also sent letters stating that Wrecker 1 and Silent Night were the same company.

At some point, Swanson heard from a GEICO insurance adjuster, Summer Smith, regarding complaints of over-charging by Wrecker 1. Swanson relayed those complaints to the County and encouraged Smith to contact the County directly. Smith did so; she also had a meeting with the city manager. In February 2012, the County

---

[5] Elkins, the other approved wrecker on the County list, also made complaints about Wrecker 1.

4

held a due cause hearing regarding the complaints. None of the defendants were present at the hearing, and Stacy concedes that the defendants had "[nothing] to do with the evidence . . . provided at the hearing." In April 2012, based upon evidence introduced at the hearing, the County suspended Wrecker 1 from towing for 90 days after concluding that it had overcharged customers on 24 occasions.

Unrelated to the defendants' complaints, the Wrecker Services Committee received a complaint from Lee Hamlin regarding a claim of overcharging. In 2012, a truck owned by Hamlin was in an accident with a truck owned by Penske, and Wrecker 1 cleared Hamlin's truck from the roadway; Hamlin offered to pay for services rendered in moving the truck to the shoulder, but requested that Wrecker 1 not tow the truck from the scene. Wrecker 1 not only disregarded Hamlin's request, it also charged him $11,647.75 for the tow.

On August 28, 2012, the Wrecking Service Committee conducted a due cause hearing on Hamlin's complaint. Although Wrecker 1 received notice of the hearing, no one from the company attended the hearing. The Committee issued a written ruling finding that Wrecker 1 had overcharged Hamlin by $7,822.75.[6] Although Penske did

---

[6] The Committee also noted that Wrecker 1 attempted to sell Hamlin's vehicle when he refused to pay the excessive invoice.

not contest its bill, the Committee also reviewed Wrecker 1's $13,965 invoice to Penske and found that Wrecker 1 over-charged Penske by $13,055. Based upon the finding of overcharges to Penske and Hamlin, falsification of invoices, and the evidence supporting Wrecker 1's prior suspension, the Committee permanently removed Wrecker 1 from its list of authorized towing companies.

The same day as the hearing, Wrecker 1 and Stacy Richardson filed suit against the Swanson defendants, alleging a claim for tortious interference with business relations. Specifically, the plaintiffs alleged that Swanson was responsible for Wrecker 1's removal from the County's list of authorized wreckers. In September 2012, the plaintiffs amended the complaint to include claims for libel and slander based upon comments made by Cha and McCallister that allegedly soiled the plaintiffs' reputations and linked Wrecker 1, erroneously, with Silent Night. Swanson moved for summary judgment on all three claims, and the trial court denied the motion. This appeal followed.

1. *Tortious interference with business relations*. The defendants argue that the trial court erred by denying their motion for summary judgment as to the plaintiffs' claim of tortious interference with business relations. We agree.

"Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant[s] without privilege; (2) the defendant[s] acted purposely and with malice with the intent to injure; (3) the defendant[s] induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff[s]; and (4) the defendant[s'] tortious conduct proximately caused damage to the plaintiff[s]."[7]

Here, pretermitting whether the plaintiffs can establish the first two elements, they have failed to establish that it was the defendants' conduct that induced Henry County to remove Wrecker 1 from the list of authorized towing services. Even assuming that the defendants' conduct in making complaints and encouraging Smith to do the same instigated the investigation, the County did not suspend and ultimately terminate Wrecker 1's status based upon the defendants' complaints. Rather, the County conducted hearings at which it took in evidence from Hamlin and Smith before making its decisions regarding Wrecker 1. The defendants did not participate at either hearing. Under these circumstances, the plaintiffs have failed to demonstrate

---

[7] *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 818 (2) (708 SE2d 672) (2011), quoting *Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (1) (645 SE2d 653) (2007).

7

that the defendants either induced Henry County to discontinue the business relationship with Wrecker 1 or proximately caused Wrecker 1's damages.[8] Accordingly, Wrecker 1's claim for tortious interference fails as a matter of law.[9]

2. *Defamation*. The defendants also allege that the trial court erred by denying their motion for summary judgment as to the plaintiffs' claims for libel and slander. Again, we agree.

First, we note that the claims are not particularly well set forth in the amended complaint, which alleges that Cha and McCallister "published and communicated defamatory statements." The exact defamatory statements are not identified. Before the trial court, Wrecker 1 pointed to statements made by the defendants equating

---

[8] See *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 322 Ga. App. 596, 599 (2) (745 SE2d 806) (2013) (tortious interference claim failed because plaintiff could not show that, independent of alleged misdeeds, the result would have been different); *Barnwell v. Barnett & Co.*, 222 Ga. App. 694, 695 (1) (476 SE2d 1) (1996) (defendant could not be held liable for tortious interference because the defendant had no input in decision-making).

[9] See *Duke Galish, LLC v. Manton*, 291 Ga. App. 827, 832 (1) (662 SE2d 880) (2008).

Wrecker 1 with the defunct Silent Night, which Wrecker 1 alleges "soil[ed its] reputation."

OCGA § 51-5-1 defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." Slander may consist of "[m]aking charges against another in reference to [her] trade, office, or profession, calculated to injure [her.]"[10] Both libel and slander constitute defamation.[11]

> Generally, there are four elements in a cause of action for defamation: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm.[12]

(a) *McCallister's statements that Wrecker 1 has "no morals" and that the Richardsons are "crook[s]."*

---

[10] OCGA § 51-5-4 (a) (3).

[11] See *Ajouelo v. Auto-Soler Co.*, 61 Ga. App. 216-221 (6 SE2d 415) (1939).

[12] (Punctuation omitted.) *Renton v. Watson*, 319 Ga. App. 896, 900 (2) (739 SE2d 19) (2013), quoting *Wertz v. Allen*, 313 Ga. App. 202, 205 (1) (721 SE2d 122) (2011).

9

In an email to a County official, McCallister alleged that Wrecker 1 "had no morals" and characterized the Richardsons as "mean, vulgar, demeaning[] crook[s]." These statements are not actionable because they are expressions of opinion.

> [A] defamation action will lie only for a statement of fact. This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false. As a result, a plaintiff who claims that a published opinion defamed him will generally be unable to carry his burden of proving the essential element of falsity. Still, there is no wholesale defamation exception for anything that might be labeled opinion.[13]

With regard to implications of criminal activity,

the words at issue must charge the commission of a specific crime punishable by law. Where the plain import of the words spoken impute no criminal offense, they cannot have their meaning enlarged by innuendo. Indeed, the statement must give the impression that the crime is actually being charged against the individual and couched in language as might reasonably be expected to convey such meaning to a hearer of the statement; a vague statement or even a derogatory one does not amount to slander per se when a person cannot reasonably conclude

---

[13] (Punctuation omitted.) *Cottrell v. Smith*, 299 Ga. 517, 523 (II) (A) (788 SE2d 772) (2016), quoting *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (677 SE2d 149) (2009).

from what is said that the comments are imputing a crime to the plaintiff.[14]

Here, the defendants' statements characterizing the plaintiffs as without morals and as "mean, vulgar, demeaning[] crook[s]" do not allege a specific crime. Instead, they constitute expressions of opinion, which are not actionable.[15]

(b) *Statements equating Wrecker 1 with Silent Night.* Similarly, the defendants' statements equating Wrecker 1 with Silent Night are not actionable. The plaintiffs do not point to a specific statement by the defendants, but instead allege generally that the statements that characterize Wrecker 1 as a continuation of Silent Night are defamatory. But the defendants did not state that the two companies are the same legal entity. Instead, they alleged that Wrecker 1 "used to be under the name of Silent Knight [sic] and got in HOT water with the [PSC] (which is public record on the

---

[14] (Citation and punctuation omitted). *Cottrell*, 299 Ga. at 524 (II) (A).

[15] See id. at 529 (II) (A) (2) (holding that allegations that the plaintiff was "not trustworthy" and that "his activities with the women he has deceived and taken money from are criminal" constitute opinion). See also *Gast v. Brittain*, 277 Ga. 340, 341 (589 SE2d 63) (2003) ("assertions regarding 'immorality' . . . are plainly the sorts of opinions that are incapable of being proved false"); *Janet Ricker Builder, Inc. v. Gardner*, 244 Ga. App. 753, 755 (4) (536 SE2d 777) (2000) (holding that a sign in a homeowner's window stating that her house was a "lemon" is "a constitutionally protected expression of opinion" that could not support a claim for tortious interference with business relations).

11

Internet for you to see) so they changed their name to Wrecker 1." It is undisputed that the PSC revoked Silent Night's towing permit, and therefore this portion of the statement is true, as is the fact that the owners of both companies are married to each other. To the extent that the defendants characterize Wrecker 1 as a continuation of Silent Night, incorporated in an attempt to evade the negative reputation of Silent Night and to obtain a towing permit, that is an "expression of opinion on matters with respect to which reasonable men might entertain differing opinions. . . ."[16]

(c) *Allegations that Wrecker 1 overcharged customers.* Finally, to the extent that the plaintiffs alleged that the defendants' accusations regarding Wrecker 1 overcharging customers were defamatory, such claims fail. As aforementioned, the County concluded that Wrecker 1 had, in fact, overcharged truck owners. Thus, the plaintiffs failed to establish that the accusations regarding overcharging were not true.[17]

---

[16] (Punctuation omitted.) *Gast*, 277 Ga. at 341, quoting *Bergen v. Martindale-Hubbell*, 176 Ga. App. 745, 747 (337 SE2d 770) (1985). See also *Collins v. Cox Enterprises*, 215 Ga. App. 679, 680 (452 SE2d 226) (1994) (newspaper editorial stating that PSC candidate was trying to "fool voters" by changing his name "does not imply an assertion of objective fact that might be proved false; rather, it is merely speculation as to [the candidate's] motive based on his behavior").

[17] See id. at 846 (1) (a).

12

Accordingly, the trial court erred by denying the defendants' motion for summary judgment as to the plaintiffs' defamation claims.

*Judgment reversed. Miller, P. J., and Reese, J., concur*.