**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 18, 2021**

# In the Court of Appeals of Georgia

A21A0422. GRACE et al. v. LOWERY et al.

PIPKIN, Judge.

A jury returned a general verdict in favor of Appellees James Lowery and Ortiz Custom Guns, LLC., finding Appellants Virgil A. Grace, Patricia A. Grace, and Uniforms by Patrick, Inc., liable for damages arising after Appellees unwittingly purchased stolen guns from Appellants' employee. On appeal, Appellants assert, among other things, that the evidence was insufficient to sustain the verdict. We agree that at least one of Appellees' claims – defamation – was improperly submitted to the jury; accordingly, we reverse the judgment of the trial court and remand for a new trial.

Virgil A. Grace and his wife, Patricia Grace, owned and operated "Uniforms by Patrick," a business that, as the name implies, largely sold uniforms; however, the

business also sold firearms and had a gun range. In 2013, Virgil hired Christopher Edgecombe. Edgecombe eventually became gun range manager and master at Uniforms by Patrick, which meant that he "oversaw everything on the firearms side" of the business. In June 2013, Edgecombe began selling firearms to James Lowery, a representative of a smaller firearms operations known as Ortiz Custom Guns.[1] In the nearly five months that followed, Edgecombe sold dozens of firearms to Ortiz Custom Guns, either through Lowery or other Ortiz representatives. Unbeknownst to Ortiz Custom Guns, its representatives, or Uniforms by Patrick, Edgecombe was pocketing the proceeds of those firearms sales, and, it turned out, was a convicted felon who was prohibited from dealing in firearms.[2]

The Graces eventually uncovered Edgecombe's misdeeds and confronted him; Edgecombe was arrested for theft, and all of the guns Edgecombe sold to Ortiz Custom Guns were reported stolen. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") became involved in the matter, and the ATF seized firearms from

---

[1] The jury heard testimony that it is not uncommon for a smaller gun shop to buy firearms for resale from other gun retailers.

[2] The Graces did not conduct a background check on Edgecombe when he was hired; this decision, and the reasoning behind it, was a central issue at trial.

2

both Ortiz Custom Guns and from Ortiz's customers .[3] A local news station picked up the story and published details of the affair, including a statement by local law enforcement suggesting that Ortiz Custom Guns was complicit in Edgecombe's misdeeds. Ortiz Custom Guns also learned that the Graces had been making disparaging comments about Ortiz Custom Guns and its involvement with Edgecombe.

Appellees subsequently brought this action against Appellants alleging, among other things, defamation, negligent hiring and retention of Edgecombe, and false light invasion of privacy. At trial, the jury was charged on numerous claims and returned a general verdict in favor of Appellees. The jury found Appellants liable for almost $3 million in damages and attorney fees.[4] Appellants now argue on appeal, among

---

[3] The guns were later returned to both Ortiz Custom Guns and its customers; Edgecombe eventually pleaded guilty to stealing firearms from a federally licensed firearms dealer.

[4] The jury awarded $1,000,000 to Lowery, $1,500,000 million to Ortiz Custom Guns, and $202,000 in attorney fees; the jury also awarded punitive damages. The jury apportioned fault as follows: Virgil Grace, 25%; Patricia Grace, 25%; and, Uniforms by Patrick, 50%.

other things,[5] that Appellees' defamation claim was improperly submitted to the jury because there was no evidence of any specific defamatory statement of fact.[6] We agree.

---

[5] Appellants' first enumeration of error concerns Appellees' claim of false light invasion of privacy, which arises out of the media coverage in which law enforcement linked Appellees to Edgecombe's gun-selling scheme. Appellees' theory of the claim is that, but for Virgil's negligent hiring of Edgecombe, Appellees would not have been involved in Edgecombe's scheme or been publicly linked it. On appeal, Appellants assert that they were entitled to a directed verdict on this claim. Specifically, Appellants contend that a plaintiff may only pursue a false light claim against the party who actually publishes the alleged falsehood placing the plaintiff in a false light and that, here, the undisputed evidence shows that Appellants were not responsible for the content of the news report or its publication. However, while Appellants moved the trial court for a directed verdict on the question of "publication" as to the various defamation claims and argued that Appellees could not simultaneously pursue their defamation and false light claims, Appellants never specifically argued below (as they do on appeal) that a false light claim requires that a defendant be involved in the content or the publication of the alleged falsehoods. Thus, though Appellees' novel interpretation of the tort of false light invasion of privacy is troubling, see *Smith v. Stewart*, 291 Ga App. 86, 100 (5) (a) (ii) (660 SE2d 822) (2008), and *Torrance v. Morris Publishing Group, LLC*, 281 Ga. App. 563, 572 (3) (b) (636 SE2d 740) (2006), Appellants' failure to raise this specific claim in their motion for directed verdict precludes them from pursuing it on appeal to seek a judgment as a matter of law. See *Old Republic Nat. Title Ins. Co. v. RM Kids, LLC,* 337 Ga. App. 638, 645 (3) (788 SE2d 542) (2016). Further, while Appellants may still seek a *new trial* based on the sufficiency of the evidence of this claim, see id., our reversal of the general verdict on other grounds renders any such inquiry unnecessary.

[6] Appellants did not move for a directed verdict on this claim, but they may nonetheless still seek a new trial on the basis that the evidence was insufficient to sustain the verdict. See *Aldworth Co., Inc. v. England*, 281 Ga. 197, 198-201 (2) (637 SE2d 198) (2006).

4

In their amended complaint, Appellees alleged that the Graces "made multiple statements in front of customers and employees [of Uniforms by Patrick] that implied that both Ortiz Custom Guns and its manager [Lowery] engaged in 'illegal activity,' including but not limited to unlawful firearms trading with [Edgecombe]." To prove their claim of defamation, Appellees were required to show the following: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011). "[T]he defamatory statement must be published," and "[a] plaintiff cannot prove publication without introducing evidence of the specific statement used in an allegedly defamatory communication." (Citations omitted.) *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 748-749 (1) (667 SE2d 716) (2008). In reviewing this claim, we look only to see whether there is "any evidence" to support it. See *Aldworth Co., Inc. v. England*, 281 Ga. 197, 201 (2) (637 SE2d 198) (2006).

While Appellees claim that Appellants engaged in a "a campaign of defamatory comments and slanderous allegations against Appellees" and were "making allegations that Appellees knew of Edgecombe's devious dealings and were willfully

5

complicit in his criminal enterprise," Appellees have wholly failed to identify any specific statements which would support a claim of defamation, and they have failed to cite any meaningful case law supporting their position that the evidence was sufficient to support a claim of defamation. A review of the transcript reflects that a former employee at Uniforms by Patrick testified that "[c]onversations were had, in the open, about firearms being stolen or Ortiz Customs buying stolen firearms. *Exact conversations, I couldn't give you*." (Emphasis supplied.) In fact, this employee repeatedly testified that, although the Graces had allegedly made derogatory comments about Ortiz Custom Guns, he could not recall exact statements. This vague testimony, which fails to identify any particular words or statements made by Appellants, affords no basis for recovery. See *ITT Rayonier, Inc. v. McLaney*, 204 Ga. App. 762, 765 (2) (420 SE2d 610) (1992).

Likewise, while the jury heard that Patricia Grace had been overheard saying, "Once we're done with them, they'll be out of business," this mere statement of opinion or rhetorical hyperbole is not actionable. "An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." See *Gast*

*v. Brittain*, 277 Ga. 340, 341 (589 SE2d 63) (2003). At most, Patricia's statement "implies that [Appellants] ha[d] a negative opinion of [Appellees], but it is too far of a stretch to interpret the [statement] as implying 'defamatory facts' about [Appellees.]" *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 811-812 (1) (a) (708 SE2d 672) (2011) (yard sign stating "Ask our opinion why not to buy a Harrison & Lynam Home" not actionable as defamation). *Swanson Towing & Recovery, LLC v. Wrecker 1, Inc.*, 342 Ga. App. 6, 11 (2) (a) (802 SE2d 300) (2017) (no action for defamation where representative of one towing business wrote that the owners of a competing towing business had no morals and were "mean, vulgar, and demeaning crooks" (punctuation omitted)). Accordingly, there was no evidence supporting Appellees' claim of defamation, and it was error for the jury to consider the claim.

As discussed above, the jury considered numerous claims and returned only a general verdict. Where, as here, a case is submitted to the jury on various claims, and the jury returns a general verdict such that we cannot determine on which basis the verdict was entered, the verdict cannot stand. *Southeastern Pain Specialists, P.C. v. Brown*, 303 Ga. 265, 273 (2) (b) (811 SE2d 360) (2018); *Godwin v. Godwin*, 265 Ga.

7

891, 892 (1) (463 SE2d 685) (1995). Accordingly, we reverse the judgment of the trial court and remand this matter for a new trial.[7]

*Judgment reversed and case remanded. Miller, P. J., and Hodges, J., concur.*

---

[7] Our holding renders moot Appellants' remaining enumeration, which argues that a new trial is necessary because, they say, there was insufficient evidence to support Appellees' claims of negligence.